FILED
U.S. DISTRICT COURT
DISTRICT OF NEBRASKA

2025 OCT 20 AM 11: 48

OFFICE OF THE CLERK

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEBRASKA**

|  |  |  |
|---|---|---|
| JOHN C. SHORES, JR., | ) | |
| | ) | Cv No. 8:25-cv-00517-RFR |
| Movant, | ) | Cr No. 8:23-cr-00174-RFR-MDN-1 |
| | ) | |
| v. | ) | **MEMORANDUM OF LAW IN** |
| | ) | **SUPPORT OF MOTION UNDER** |
| UNITED STATES OF AMERICA, | ) | **28 U.S.C. § 2255 TO VACATE,** |
| | ) | **SET ASIDE, OR CORRECT SENTENCE** |
| Respondent. | ) | **BY A PERSON IN FEDERAL CUSTODY** |

COMES Movant, JOHN C. SHORES, JR. ("Shores"), appearing *pro se,* and in support of this memorandum would show as follows:

## I. JURISDICTION

Shores is timely filing a Motion to Vacate, Set Aside, or Correct a Sentence by a Person in Federal Custody Pursuant to 28 U.S.C. § 2255 ("§ 2255 Motion") contemporaneously with this Memorandum of Law. Jurisdiction is vested in this District Court that presided over and imposed sentence pursuant to Rule 4(a) of the Rules Governing § 2255 Proceedings. See *Liteky v. United States*, 510 U. S. 540, 562 (1994). Under 28 U.S.C. § 2255, federal prisoners "claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States" may move the district "court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a).

## II. STATEMENT OF THE GROUNDS FOR REVIEW

A.    Whether pretrial counsel's failure to: (1) Communicate with Shores and correctly inform him of the relevant circumstances and likely consequences of pleading guilty as opposed to proceeding to trial; (2) Conduct an adequate and independent pretrial investigation; and (3) Attempt to negotiate a favorable Plea Agreement deprived Shores of effective assistance of pretrial counsel

under the Sixth Amendment of the Constitution of the United States.

B.   Whether sentencing counsel's failure to: (1) Review, discuss or explain the Presentence Report ("PSR") to Shores prior to sentencing hearing; (2) File substantive objections to the PSR; (3) Argue for mitigation of punishment and object to his sentence being substantively unreasonable deprived Shores of effective assistance of sentencing counsel under the Sixth Amendment, a fair and just sentence.

## III. STATEMENT OF THE CASE

### A.   Procedural Background

On November 14, 2023, the grand jury sitting in the United States District Court for the District of Nebraska, Omaha Division, returned a seven (7) Count Superseding Indictment charging Shores. See Doc. 48.[1] Counts 1s, 5s, and 7s charged Shores with Attempted Sexual Exploitation of A Minor, in violation to 18 U.S.C. §§ 2251(a) and (e). *Id.* Counts 2s, 3s, and 6s charged Shores with Attempted Enticement of A Minor, in violation to 18 U.S.C. § 2422(b). *Id.* Count 4s charged Shores with Distribution and Receipt of Child Pornography, in violation to 18 U.S.C. §§ 2252(a)(2) and (b)(1). *Id.*

On May 30, 2024, a Change of Plea Hearing was held and Shores pleaded guilty to Count 1s of the Superseding Indictment, pursuant to a Written Plea Agreement. See Docs. 66, 69.

On August 23, 2024, Shores was sentenced to a term of 240 months' imprisonment, 20 years of Supervised Release, a Mandatory Special Assessment Fee of $100 and an additional AVAA assessment of $7,500. See Docs. 87, 91.

---

[1] "Doc." refers to the Docket Report in the United States District Court for the District of Nebraska, Omaha Division in Criminal No. 8:23-cr-00174-RFR-MDN-1, which is immediately followed by the Docket Entry Number.

**B.    Statement of the Relevant Facts**

1.    Offense Conduct

The government and Shores, through the advise of his counsel, agreed to the following:

That on or about August 4, 2023, through August 10, 2023, Defendant John C. Shores, Jr., using his cellular phone, engaged in an online conversation via the chat application Whisper and text messages with an undercover officer purporting to be a thirteen-year-old girl. During the conversations, Shores asked the other user to exchange naked and sexually explicit pictures for the purpose of masturbation. Shores also sent sexually explicit images to the other user.

On August 10, 2023, Shores made arrangements to meet with the user that he believed to be a thirteen-year-old girl and arrived at the meeting location in Omaha, Nebraska, as arranged. Law enforcement contacted Defendant and seized four cell phones from Shore's vehicle. Forensic examinations of Shore's cell phones revealed numerous sexually explicit online conversations. In one such conversation, occurring primarily between July 7, 2020, and July 27, 2020, Shores contacted and conversed with 13-year-old female who resided in southeastern Nebraska; this 13 year-old female has been identified.

See Doc. 69 at 2.

2.    Plea Proceeding

On May 30, 2024, a Change of Plea Hearing was held before Chief Judge Robert F. Rossiter, Jr. See Doc. 66. Shores pleaded guilty as to Count 1s of the Superseding Indictment pursuant to a Written Plea Agreement. See Doc. 69. On August 20, 2024, Shores filed a Motion to Withdraw Plea of Guilty, which was denied on the day of his sentencing. See Docs. 78, 79, 87. Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), the parties agreed Shores should receive a sentence of not less than 180 months' imprisonment and not more than 240 months' imprisonment. *Id.* In exchange of his guilty plea, the government agreed to dismiss the remaining counts on the Superseding

3

Indictment. *Id.* The case was referred to the Probation Office for the preparation of the PSR.[2]

### 3.    Presentence Report Calculations and Recommendations

The PSR was ordered by the District Court and prepared by the U. S. Probation Department. The 2023 Guidelines Manual, incorporating all guideline amendments, was used to determine Shores' offense level pursuant to U.S.S.G. § 1B1.11. See PSR ¶ 37. USSG § 2G2.1(d)(1) provides that when an offense involves the exploitation of more than one minor, Chapter Three, Part D (Multiple Counts) must be applied as though each minor's exploitation were charged in a separate count of conviction. Here, Count 1A—Attempted Sexual Exploitation of a Minor (Victim 2)—reflects conduct similar to Count 1, thereby triggering this special instruction. This conduct was also charged separately in Count 5 of the Superseding Indictment. See PSR ¶ 38. Count 1: Attempted Sexual Exploitation of A Minor (Victim 1) calls for a Base Offense Level of 32 pursuant to U.S.S.G. § 2G2.1(a). See PSR ¶ 39. Two (2) levels were added because the offense involved a minor, pursuant to U.S.S.G. § 2G2.1(b)(1)(B). See PSR ¶ 40. Another two (2) levels were added because Shores used online applications and messaging services to contact the minor victim, pursuant to U.S.S.G. § 2G2.1(b)(6)(B). See PSR ¶ 41. The PSR calculated the Adjusted Offense Level (Subtotal) to be level 36. See PSR ¶ 45. Count 1A: Attempted Sexual Exploitation of A Minor (Victim 2-Count 5s) calls for a Base Offense Level of 32 pursuant to U.S.S.G. § 2G2.1(a). See PSR ¶ 46. Four (4) levels were added because Shores repeatedly asked the victim to send pictures of her private parts, pursuant to U.S.S.G. § 2G2.1(b)(1)(A). See PSR ¶ 47. Another two (2) levels were added because Shores used online applications and messaging services to contact the minor victim, pursuant to U.S.S.G. §

---

[2] "PSR" refers to the Presentence Report in this case, which is immediately followed by the paragraph ("¶") number.

2G2.1(b)(6)(B). See PSR ¶ 48. The PSR calculated the Adjusted Offense Level (Subtotal) to be level 38. See PSR ¶ 52. For multiple count adjustment, the PSR assigned one additional unit for each group or count, pursuant to U.S.S.G. §§ 3D1.4(a), (b), and (c). See PSR ¶ 53. The Greater of the Adjusted Offense Levels was level 38. See PSR ¶ 54. Two (2) levels were added for assigned one additional unit for each group or count, pursuant to U.S.S.G. § 3D1.4. See PSR ¶ 55. The PSR calculated the Combined Adjusted Offense Level to be level 40. See PSR ¶ 56. Shores received a three (3) level reduction for acceptance of responsibility, pursuant to U.S.S.G. §§ 3E1.1(a) and (b). See PSR ¶ 58. The PSR calculated Shores' Total Offense Level to be level 37. See PSR ¶ 59. His total criminal history points of zero (0), placed him in Criminal History Category I. See PSR ¶ 63. Based upon a Total Offense Level of 37 and a Criminal History Category of I, the guideline imprisonment range was 210 to 262 months. See PSR ¶ 90.

### 4. Sentencing Proceeding

On August 23, 2024, a Sentencing Hearing was held before Chief Judge Robert F. Rossiter, Jr. See Doc. 87. The Court sentenced Shores to 240 months' imprisonment and the remaining counts in the Superseding Indictment were dismissed. See Doc. 91. It is followed by 20 years of Supervised Release. *Id.* This Court also ordered payment of a Mandatory Special Assessment Fee of $100 and an additional AVAA Assessment Fee of $7,500. *Id.* No direct appeal was filed in this case.

### IV. COGNIZABLE ISSUES UNDER 28 U.S.C. § 2255

The function of a § 2255 Motion to Vacate, Set Aside or Correct Sentence is to inquire into the legality of the federal prisoner's detention. See *Heflin v. United States*, 358 U. S. 415, 421 (1959). Section 2255 provides four grounds that justify relief for a federal prisoner who challenges the imposition or length of his or her detention: (1) "that the sentence was imposed in violation of the

Constitution or laws of the United States"; (2) "that the court was without jurisdiction to impose such sentence"; (3) "that the sentence was in excess of the maximum authorized by law"; or (4) "that the sentence is otherwise 'subject to collateral attack.'" 28 U. S. C. § 2255 (1994). Despite this apparently broad language, violations of federal law are only cognizable if they involve a "fundamental defect" resulting in a "complete miscarriage of Justice." *Davis v. United States*, 417 U. S. 333, 346 (1974).

Section 2255 permits a federal prisoner to bring a collateral challenge by moving the sentencing court to vacate, set aside, or correct the sentence. 28 U.S.C. § 2255(a). Once a petitioner files a § 2255 motion, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255(b). A petitioner is entitled to an evidentiary hearing if he "alleges facts that, if true, would entitle him to relief." *Deltoro-Aguilera v. United States*, 625 F.3d 434 (8th Cir. 2010). "[A] petitioner need only allege – not prove – reasonably specific, non-conclusory facts that, if true, would entitle him to relief."*Owens v. Balt. City State's Attorneys Office*, 767 F.3d 379 (4th Cir. 2014). However, a district court need not hold a hearing if the allegations are "patently frivolous," "based upon unsupported generalizations," or "affirmatively contradicted by the record." *Holmes*, 876 F.2d at 1553.

A § 2255 Motion requires the district court to either order the government to respond or to hold an evidentiary hearing unless the Motion, files and record of the case demonstrate that no relief is warranted. See *Franco v. United States*, 762 F.3d 761 (8th Cir. 2014). "Under 28 U.S.C. § 2255, unless the motion and record as constituted show conclusively that relief is not available, an evidentiary hearing should be held." 28 U.S.C. § 2255(b).

Upon granting a § 2255 Motion, "[t]he court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him . . . or correct the sentence as may appear appropriate." 28 U. S. C. § 2255. The remedy provided in § 2255 is broad and flexible, and entrusts the federal courts with the power to fashion appropriate relief. See *Andrews v. United States*, 373 U. S. 334, 339 (1963).

Ineffective assistance of counsel claims are cognizable in a § 2255 setting because they are of constitutional dimension. See *Kimmelman v. Morrison*, 477 U.S. 365, 371-79 and n.3 (1986); *Strickland v. Washington*, 466 U. S. 668 (1984).

To prevail on a claim of ineffective assistance of counsel, defendant must show that (1) his counsel's representation fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. See *Kimmelman*, 477 U. S. at 375.

The "reasonableness of counsel's challenged conduct" must be judged "on the facts of the particular case, viewed as of the time of counsel's conduct." *Lockhart v. Fretwell*, 506 U.S. 364, 371(1993)(citing *Strickland*, 466 U. S. at 690). In the course of the latter portion of this inquiry, the Court must consider not merely whether the outcome of the defendant's case would have been different, but also whether counsel's deficient performance caused the outcome to be unreliable or the proceeding to be fundamentally unfair. See *Lockhart*, 506 U. S. at 368-73. "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Lockhart*, 506 U. S. at 372. Thus, prejudice is measured by current law and not by the law as it existed at the time of the alleged error. *Id.*

7

The familiar two-part test of *Strickland* has been applied by the Supreme Court and the Second Circuit in a wide variety of contextual challenges to the effectiveness of counsel's performance. With regard to the performance prong of the *Strickland/Hill* test, "if a defendant is represented by counsel and pleas guilty upon advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." *McMann v. Richardson*, 397 U. S. 759 (1970). "[T]o prove prejudice, [defendant] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 841-42. "And, of course, 'any amount of actual jail time has Sixth Amendment significance,' which constitutes prejudice for purposes of the *Strickland* test." *Glover v. United States*, 531 U.S. 198, 203 (2001). Additionally, "[o]ne of the most precious applications of the Sixth Amendment may well be in affording counsel to advise a defendant concerning whether he should enter a plea of guilty." *Padilla v. Kentucky*, 130 S.Ct. 1473 (2010). "Before deciding whether to plead guilty, a defendant is entitled to 'the effective assistance of competent counsel.'" See *Missouri v. Frye*, 132 S.Ct. 1399 (2012); *Lafler v. Cooper*, 132 S.Ct. 1376 (2012); *Premo v. Moore*, 131 S.Ct. 733, 743 (2011); *Padilla v. Kentucky*, 130 S.Ct. 1473, 1480-81 (2010).

In an effort to provide guidance as to how *Hill* applies to differing factual settings, the Supreme Court decided *Lafler* and *Frye* and established a constitutional standard applicable in all of the separate phases of a criminal trial to which the Sixth Amendment applies, including the point at which a defendant decides whether to plead guilty to a crime. In *Lafler*, the Court held that when counsel's ineffective advice led to an offer's rejection, and when the prejudice alleged is having to stand trial, a defendant must show that, but for the ineffective advice, there is a reasonable probability

that the plea offer would have been presented to the court, that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the actual judgment and sentence imposed. In *Frye*, the Court held that the Sixth Amendment right to effective assistance of counsel extends to the consideration of plea offers that lapse or are rejected, and that right applies to "all 'critical' stages of the criminal proceedings."

Finally, in a ruling on a motion under § 2255, the District Court is required to hold a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255.

## V. DISCUSSION

As a preliminary matter, Shores respectfully requests that this Court be mindful that *pro se* pleadings are to be construed liberally. See *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (*Pro se* pleadings are to be held to less stringent standards than formal pleadings drafted by lawyers, and should therefore be liberally construed); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (same); and *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (same).

A.   **Counsel's Failure To: (1) Communicate with Shores and Inform Him of the Relevant Circumstances and Likely Consequences of Pleading Guilty As Opposed to Proceeding to Trial; (2) Conduct An Adequate and Independent Pretrial Investigation; and (3) Attempt to Negotiate A Favorable Plea Agreement Deprived Shores of Effective Assistance of Pretrial Counsel Under the Sixth Amendment of the Constitution of the United States.**

   1.   Communicate with Shores and Inform Him of the Relevant Circumstances and Likely Consequences of Pleading Guilty as Opposed to Proceeding to Trial

Chapter 1, Rule 1.4: Communication of the Nebraska Rules of Professional Conduct states that:

9

(a)    A lawyer shall:

    (1)    promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in RPC 1.0(e), is required by these Rules;

    (2)    reasonably consult with the client about the means by which the client's objectives are to be accomplished;

    (3)    keep the client reasonably informed about the status of the matter;

    (4)    promptly comply with reasonable requests for information; and

    (5)    consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted by the Rules of Professional Conduct or other law.

(b)    A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

Reasonable communication between an attorney and client is a cornerstone of effective representation and essential to the client's ability to meaningfully participate in his own defense. *Strickland v. Washington*, 466 U.S. 668, 688 (1984), recognizes that counsel must bring to bear such skill and knowledge as will render the trial a reliable adversarial testing process. The Eighth Circuit has similarly acknowledged that a lack of communication between attorney and client can support an ineffective assistance of counsel claim, especially where it results in the client being uninformed about the case or coerced into a plea. *United States v. Ledezma-Rodriguez*, 423 F.3d 830, 836–37 (8th Cir. 2005); *Winfield v. Roper*, 460 F.3d 1026, 1033 (8th Cir. 2006).

In this case, Glenn A. Shapiro ("Shapiro") served as Shores' retained counsel from pretrial through sentencing. Over the course of approximately twelve months, Shapiro visited Shores only six times, with meetings typically lasting one to two hours. Initial discussions concerned the charges and discovery, including analysis of a chat in which Shores asked for "more skin" from the alleged

10

minor victim who was wearing a jacket in her profile—a statement that, as Shapiro advised, was not sexually explicit. However, following a superseding indictment and threats by the government to fabricate the existence of identified victims, their limited discussions shifted to two chat incidents allegedly occurring in 2019–2021. Shapiro advised that such evidence could result in a life sentence.

Following that conversation, Shapiro ceased all meaningful communication. For eleven months, he failed to respond to Shores' repeated phone calls, despite his office and voicemail receiving multiple messages. Shores was left uninformed about the direction of his case. Only after Shores' son intervened did Shapiro send three or four letters, which merely reiterated the prosecution's threats of fabricated victims. See Exhibit 1. At no point did Shapiro outline a coherent defense strategy or adequately involve Shores in preparing for trial.

Instead, Shapiro misrepresented both the charges and potential consequences to coerce Shores into pleading guilty. Shapiro inaccurately assured Shores that he would plead only to Attempted Enticement of a Minor, not to more serious charges such as Attempted Sexual Exploitation of a Minor or Distribution and Receipt of Child Pornography. He also falsely represented that Shores would be eligible for First Step Act (FSA) and Federal Time Credit (FTC) benefits—benefits for which Shores was categorically ineligible under 18 U.S.C. § 3632(d)(4)(D), due to the nature of the charges. Shapiro further told Shores and his family that by accepting the plea, Shores would face only 15-20 years in prison on three counts, whereas going to trial and losing would result in a life sentence. This presented a coercive false division that left Shores without an informed or voluntary choice. See *United States v. Villareal-Amarillas*, 562 F.3d 892, 899 (8th Cir. 2009) ("An uninformed decision to plead guilty does not represent a voluntary and intelligent choice.").

Shapiro made similar misrepresentations to Shores' family, asserting that Shores had

11

"identified victims" and had "agreed to go to prison" under the promise of FTC eligibility—despite the fact that no such victims existed. Furthermore, Shores wrote a letter to the sentencing judge attempting to explain his version of events, but Shapiro failed to file it, depriving Shores of his opportunity to be heard.

The cumulative effect of Shapiro's failures—his near-total breakdown in communication, misrepresentations regarding charges and sentencing consequences, and refusal to pursue Shores's expressed interests—amounted to ineffective assistance under Strickland, and violated Shores' Sixth Amendment right to the effective assistance of counsel.

In sum, Shapiro's deficient performance undermined the fairness of the proceedings and resulted in a manifest injustice. Had Shores received constitutionally effective assistance, there is a strong likelihood that he would have insisted on proceeding to trial to establish his innocence. Accordingly, Shores' conviction and sentence should be vacated, and he should be afforded the opportunity to proceed to trial with effective representation.

2. Failure to Conduct An Adequate and Independent Pretrial Investigation

Defense counsel has a constitutional duty to conduct a "reasonably substantial, independent investigation" into both the facts of the case and applicable law to provide effective assistance. See *White v. Roper*, 416 F.3d 728 (8th Cir. 2005). This duty is well established by the Supreme Court in *Strickland v. Washington*, which states:

> Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

12

*Strickland v. Washington*, 466 U.S. 668, 690-91 (1984).

In this case, Shapiro wholly failed to conduct a constitutionally adequate pretrial investigation. He did not independently verify the age claims associated with the alleged victims or scrutinize the factual basis of the government's charges. Nor did he engage in basic factual development or explore exculpatory evidence that could have formed the foundation of a viable defense. Specifically:

  a.  Failure to Investigate or Confirm Age Misrepresentation by Alleged Victims

A central issue in Shores' case concerned allegations that he knowingly communicated with minors via the Whisper app. However, Shapiro never investigated or challenged the credibility of the alleged victims' age claims—despite significant factors casting doubt on the government's narrative. Shores used the Whisper app for over six years. His use of the app was not for the purpose of seeking out minors, as demonstrated by three key facts:

- Shores reasonably believed that minors were prohibited from using the Whisper platform. The app's terms of service explicitly state that users must be 17 years or older, which undermines the inference that Shores was knowingly seeking contact with underage individuals.

- The profiles Shores interacted with represented themselves as adults. Whisper allows users to post anonymous messages, but chat profiles often include claimed ages and other identifying features. There is no evidence that Shores was ever presented with verified or reliable age information indicating minority status at the time of the communications.

- User profiles did not disclose reliable identifying information—age and gender remained anonymous. This technological design feature significantly impaired any ability to discern the true age of individuals on the platform.

Despite these defense avenues, Shapiro made no attempt to obtain app data, metadata, or chat logs that could have helped confirm that the individuals were not minors or that Shores lacked the requisite mens rea. This failure to conduct even minimal investigative work into a critical element of

13

the charged offenses—whether Shores knowingly attempted to entice or engage with a minor—constitutes objectively unreasonable performance under *Strickland*.

Had Shapiro conducted even a cursory investigation, he might have uncovered favorable evidence negating the required knowledge element or allowing for a mens rea-based defense such as mistake of age. Courts in the Eighth Circuit have recognized that a failure to investigate facts central to a defendant's mental state and intent may establish deficient performance and prejudice. See *Toledo v. United States*, 581 F.3d 678, 681–82 (8th Cir. 2009) (finding ineffective assistance where counsel failed to explore available defenses based on the facts); *Chambers v. Armontrout*, 907 F.2d 825, 828 (8th Cir. 1990) (*en banc*) ("Failure to investigate a defendant's only plausible line of defense constitutes ineffective assistance.").

>           b.      Failure to Challenge Innocent Intent in the FBI Sting
>                   Operation

One of the charged counts—stemming from an FBI sting operation conducted on or about August 10, 2023—was based on a purported "meet-up" in which Shores agreed to bring lunch to an individual and verify if she's an adult. However, the government's characterization of this event as criminal under 18 U.S.C. § 2422(b) was not properly challenged by defense counsel Shapiro, despite the fact that there was no sexually explicit conduct, no attempted sexual contact, no sexually suggestive language, and no sexually explicit photos exchanged.

Shores' stated and actual purpose for the meet-up was to deliver lunch—at the request of the authorities—and to confirm her identity and age in person. The messages leading up to this meeting were devoid of sexual content and clearly demonstrate Shores' intent to verify whether the individual was, in fact, an adult, not to persuade or entice a minor into sexual activity.

14

Despite the exculpatory nature of this interaction, Shapiro failed to:

- Analyze or present the content of the chat logs to demonstrate Shores' non-sexual intent;

- Emphasize the absence of any grooming behavior, sexual solicitation, or inappropriate language;

- Highlight Shores' effort to verify the person's age, which negates the specific intent required under § 2422(b); and

- Argue that merely agreeing to meet someone for lunch is not inherently criminal, especially in the absence of evidence linking the act to an intent to engage in unlawful sexual conduct.

This omission is especially appalling given that the entire basis of the August 10, 2023 count was an undercover sting operation—a context in which courts are especially cautious about overcriminalizing conduct that lacks the necessary intent element. As the Eighth Circuit has emphasized, § 2422(b) requires proof beyond a reasonable doubt that the defendant had the specific intent to persuade, induce, or entice a minor to engage in unlawful sexual activity. Mere communications or meetings are not enough. See *United States v. Pierson*, 544 F.3d 933, 938 (8th Cir. 2008) ("The crime is in the intent to persuade or entice, not in the act of meeting."); *United States v. Helder*, 452 F.3d 751, 755 (8th Cir. 2006) (intent must be shown through sexually explicit conduct or language); *United States v. Bailey*, 228 F.3d 637, 639–40 (6th Cir. 2000) (affirming that mere preparation or innocent conduct cannot satisfy the statute without clear evidence of intent to entice for unlawful sexual purposes).

Furthermore, this Court has cautioned that sting operations involving fictitious minors must be carefully scrutinized, and the prosecution must still prove that the defendant's conduct was undertaken with the specific purpose of facilitating sexual activity with a person the defendant

15

believed to be a minor. See *United States v. Yost*, 479 F.3d 815, 818–19 (11ᵗʰ Cir. 2007) (in sting cases, the focus is still on the defendant's intent, not law enforcement's actions).

In Shores' case, there was no persuasive evidence that the lunch delivery was sexually motivated or that any attempt was made to engage in inappropriate conduct. In fact, the interaction lacked even the most minimal elements commonly associated with § 2422(b) convictions—such as explicit chats, solicitations, or exchange of sexual materials **to a minor** because he believed that all Whisper app users were adults.

By failing to confront this issue head-on, Shapiro deprived Shores of a potentially dispositive defense to one of the most serious charges in the superseding indictment. The failure to challenge this count allowed the government to frame a lawful and non-sexual interaction as a criminal act, without opposition.

    c.  Failure to Challenge the Use of "Sexually Explicit" Language
       Where None Existed

A critical error by defense counsel Shapiro was his failure to challenge the prosecution's characterization of Shores' statement—asking an individual to "show more skin"—as "sexually explicit conduct" under federal law. This mischaracterization formed part of the government's basis for charging Shores with offenses such as Attempted Sexual Exploitation of a Minor under 18 U.S.C. § 2251 and Attempted Enticement under § 2422(b), both of which require proof of sexually explicit intent or conduct.

In reality, the statement in question occurred in an online chat with an individual wearing a jacket, and Shores' comment simply requested to "see more skin." There was no reference to nudity, no request involving genitalia, breasts, or buttocks, and no sexual propositions or lewd context

16

surrounding the remark. The statement was ambiguous at most, and notably not a solicitation to engage in any act defined under the statute as "sexually explicit conduct."

**Legal Definition of "Sexually Explicit Conduct"**

Under federal law, specifically 18 U.S.C. § 2256(2)(A), sexually explicit conduct is defined narrowly and includes: Sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal; Bestiality; Masturbation; Sadistic or masochistic abuse; or Lascivious exhibition of the genitals or pubic area of any person.

To meet the threshold for lascivious exhibition, courts apply the so-called "*Dost* factors", derived from *United States v. Dost*, 636 F. Supp. 828 (S.D. Cal. 1986), which assess whether the visual depiction focuses on the child's genitals or pubic area, the setting, pose, attire, sexual suggestiveness, and intent to elicit a sexual response.

The Eighth Circuit has strictly construed this definition, emphasizing that not all nudity or suggestive remarks rise to the level of "sexually explicit conduct." For example, *United States v. Kemmerling*, 285 F.3d 644, 646–47 (8th Cir. 2002), the court distinguished between images that were merely suggestive and those that clearly focused on lascivious exhibition; *United States v. Johnson*, 639 F.3d 433, 439–40 (8th Cir. 2011), the court reaffirmed that the mere existence of skin exposure is not dispositive—there must be a sexual context, intent, or focal point consistent with the statutory definition.

Shores' statement—"show more skin"—when taken in context, involved a clothed individual and did not refer to genitalia, did not solicit nudity, and lacked any indication of sexual motivation or intent. Yet defense counsel failed to challenge this statement's characterization as sexually explicit either factually or legally. Shapiro neither moved to exclude the remark as irrelevant or prejudicial

17

under Fed. R. Evid. 401/403, nor argued that the language did not meet the statutory threshold for "sexually explicit conduct."

This failure to contest a foundational element of the government's charge—whether Shores engaged in or attempted sexually explicit conduct—amounted to constitutionally deficient performance under *Strickland v. Washington*, 466 U.S. 668 (1984). Courts have found ineffective assistance where attorneys failed to challenge erroneous or overbroad interpretations of statutory terms. See *United States v. Kauffman*, 109 F.3d 186, 190 (3d Cir. 1997) (failure to challenge government's misapplication of statutory term led to reversal); *Turner v. United States*, 699 F.3d 578, 587 (1st Cir. 2012) (attorney's failure to object to improper characterization of ambiguous conduct as criminal under federal law met *Strickland*'s deficiency prong).

Had Shapiro objected to or contested the government's misuse of the term "sexually explicit conduct," the court may have found that the comment was constitutionally protected speech or, at worst, legally insufficient to sustain charges under § 2251 or § 2422(b). The failure to draw this distinction deprived Shores of a viable defense and permitted the jury (or court) to view an ambiguous statement in the worst possible light, leading to unfair prejudice.

This omission is particularly consequential where, as here, the statement was treated as part of the *actus reus* of the offense and cited in support of charges carrying severe penalties and stigmatizing consequences. At a minimum, a proper legal challenge would have required the court to address whether the alleged conduct satisfied the legal elements of the offense—an inquiry Shapiro simply never triggered.

d.    Failure to Seek Independent Investigative Resources

Shapiro failed to file a motion requesting funds for a private investigator, as permitted under

18

18 U.S.C. § 3006A(e). The Eighth Circuit has emphasized the necessity of utilizing such resources when needed to challenge the government's case. See *United States v. Suttles*, 850 F.3d 314 (8th Cir. 2017) ("Counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary."). Instead, Shapiro limited his investigation to reviewing the government's case file and engaging in discussions with the prosecutor, without conducting any independent inquiries to corroborate or challenge the government's evidence.

e.        Prejudice to Shores

Counsel's failure to conduct a meaningful investigation prejudiced Shores by depriving him of a viable defense and leaving the government's case uncontested. As the Supreme Court has made clear, "counsel's failure to investigate a potential defense strategy constitutes deficient performance where that failure is not based on reasonable professional judgment." *Wiggins v. Smith*, 539 U.S. at 534.

f.        Had Shapiro conducted a thorough investigation

Evidence could have been uncovered to challenge the drug quantities attributed to Shores, potentially reducing his sentencing exposure under the Guidelines. Investigating alleged minor victims, which significantly enhanced his sentence. Independent evidence might have disproven the allegation that Shores had no intention of meeting minors nor enticing to engage in any sexual conduct, further weakening the government's case. These failures resulted in Shores being unprepared to challenge the prosecution effectively, leaving him with no meaningful choice but to plead guilty under misinformed circumstances– the government had minor victims who would testify should he proceed to trial. The Supreme Court and Eighth Circuit both recognize that prejudice arises when counsel's failures undermine the reliability of the outcome. See *Strickland*, 466 U.S. at 694;

19

*United States v. McGill*, 11 F.3d 223 (8ᵗʰ Cir. 1993).

In light of the above, Shapiro's failure to conduct an adequate and independent pretrial investigation constituted ineffective assistance of counsel under *Strickland*. This deficiency deprived Shores of the ability to make informed decisions about his defense and undermined the fairness of the proceedings. Therefore, Shores' conviction and sentence should be vacated, and he should be granted relief to ensure his constitutional rights are preserved.

3.    Failure to Attempt to Negotiate a Favorable Plea Agreement

Effective assistance of counsel during plea negotiations is a cornerstone of the Sixth Amendment. The Supreme Court has emphasized that a defendant must be adequately informed of "the relevant circumstances and the likely consequences" of pleading guilty versus proceeding to trial in order to make an intelligent decision. See *Lee v. United States*, 582 U.S. ___ (2017); *Brady v. United States*, 397 U.S. 742, 748 (1970). Counsel's role includes providing accurate information about potential sentencing exposure, plea offers, and the strengths and weaknesses of the case.

It is well established that when a defendant pleads guilty as a result of inaccurate legal advice, misrepresentations, or deficient performance by counsel, the resulting plea may be involuntary and constitutionally infirm. Under *Strickland v. Washington*, 466 U.S. 668, 688–89 (1984), a defendant is denied effective assistance when counsel's performance falls below an objective standard of reasonableness, and that deficiency prejudices the outcome. In the plea context, *Hill v. Lockhart*, 474 U.S. 52, 59 (1985), applies *Strickland*'s two-part test and makes clear that a guilty plea entered due to misadvice regarding material facts—including sentencing exposure or evidentiary strength—can constitute both deficient performance and prejudice.

The Eighth Circuit has echoed this principle in multiple cases, holding that misleading plea

20

advice, especially when it causes a defendant to forego a trial or plead under coercive misunderstanding, violates the Sixth Amendment. See *Engelen v. United States*, 68 F.3d 238, 241 (8th Cir. 1995) ("Defense counsel's failure to inform defendant of material terms of a plea offer or misrepresenting sentencing exposure can constitute ineffective assistance."); *United States v. Davis*, 918 F.3d 397, 403 (4th Cir. 2019) (plea vacated where counsel advised client to accept plea based on fear of life sentence and overstated evidence); *Tinajero-Ortiz v. United States*, 635 F.3d 1100, 1106 (8th Cir. 2011) (ineffective assistance found where plea was based on incorrect legal assumptions and misadvice).

In Shores' case, attorney Shapiro strongly urged him to plead guilty based on exaggerated and unverified claims about the government's evidence. Shapiro informed Shores that the prosecution allegedly had three minor victims prepared to testify against him if he opted to go to trial—a claim that lacked factual foundation. In reality, Shores asserts that no actual identified minor victims existed, and Shapiro had no evidence to support the assertion that any real victims would testify. Instead, this threat was a product of prosecutorial fabrication, and Shapiro adopted and transmitted that bluff without verification or independent challenge.

Shapiro further advised that if Shores rejected the plea, he would almost certainly be sentenced to life imprisonment, but that if he accepted the deal, he would likely serve 15-20 years and potentially receive credit under the First Step Act—despite the fact that the charges rendered Shores ineligible for FSA time credits under 18 U.S.C. § 3632(d)(4)(D). This created a false and coercive division: either accept a plea based on false assumptions, or face an inevitable life sentence based on exaggerated threats of non-existent evidence.

Shapiro's failure to verify the existence of trial witnesses, failure to investigate exculpatory

21

or impeaching evidence (e.g., age misrepresentation, intent, lack of sexual content), and misstatements regarding sentencing exposure all fall below an objective standard of reasonableness. Courts have routinely held that when an attorney provides inaccurate assessments of the government's case or the likely sentence, and that misadvice induces a guilty plea, such conduct satisfies the deficiency prong of *Strickland*. See *United States v. Mooney*, 497 F.3d 397, 401 (5th Cir. 2007) ("Misrepresentation of the length of sentence defendant would receive can render counsel's performance deficient."); *United States v. Day*, 969 F.2d 39, 43 (3d Cir. 1992) ("An attorney who grossly misinforms his client about sentencing exposure may render constitutionally deficient performance.").

Moreover, the prejudice is self-evident: Shores entered a guilty plea not with full knowledge of the facts and law, but under threat, misadvice, and fear. Had he been properly advised—i.e., that the government likely had no real victims, that the alleged conduct might not meet the threshold for "sexually explicit" activity under federal law, and that he faced less certainty of life imprisonment than Shapiro claimed—it was absolutely intended that Shores would have insisted on going to trial. See *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010) (deficient advice regarding consequences of plea can result in involuntary plea); *United States v. Frausto*, 754 F.3d 640, 645 (8th Cir. 2014).

Thus, Shores' guilty plea was not knowing, voluntary, or intelligent, as required under *Boykin v. Alabama*, 395 U.S. 238, 243–44 (1969). It was the result of constitutionally deficient legal advice, grounded in misrepresentation of the facts, the law, and the government's false or fabricated evidence. Shapiro's coercive plea advice not only violated *Strickland* standards but also deprived Shores of the fundamental right to make an informed decision about trial.

**B.**    **Sentencing Counsel's Failure To: (1) Correctly Discuss and Explain the PSR with Shores Prior to the Sentencing Hearing; (2) File Substantive Objections to the PSR; and (3) Argue for Mitigation of Punishment and Object to His Sentence Being Substantively Unreasonable Deprived Shores of Effective Assistance of Sentencing Counsel Under the Sixth Amendment, A Fair and Just Sentence.**

In Shores' case, the cumulative failures of counsel and total lack of preparation for sentencing prejudiced the outcome of sentencing and warrant vacatur of the sentence imposed.

Counsel's duties at sentencing include ensuring that the defendant fully understands the contents and implications of the PSR, raising substantive objections to incorrect or unsupported enhancements, and advocating for mitigation to secure a fair and just sentence. See *Strickland*, 466 U.S. at 688. Sentencing counsel's failure to fulfill these obligations renders their performance deficient and prejudicial, violating the defendant's Sixth Amendment rights.

1.    Failure to Review and Explain the PSR

Shores' sentencing counsel, Shapiro, failed to review or explain the PSR's findings with Shores, leaving him unaware of key allegations and enhancements that significantly increased his guideline range. This failure deprived Shores of his right to make informed decisions and undermined his ability to meaningfully participate in his defense. The Eighth Circuit has consistently held that effective representation requires counsel to review the PSR with the defendant and explain its potential impact. See *United States v. Herring*, 568 F.3d 1062 (8th Cir. 2009) (failure to explain PSR prejudices the defendant by denying an opportunity to address inaccuracies).

Initially, Shores sought to withdraw his guilty plea to Count 1s of the Superseding Indictment after reviewing the PSR. However, Shapiro failed to advise him that he was required to present specific justifications in support of withdrawal. Although Shores independently researched and

prepared fair and just reasons, Shapiro merely read them in court, and the request was denied. Had Shores been properly advised that a formal motion with supporting grounds was necessary, he could have timely filed it in advance. Furthermore, Shores realized his sentence had been overstated because, to his understanding, he had pled guilty to Attempted Enticement of a Minor. His counsel, Shapiro, failed to clearly explain the precise charge to which he was pleading. This misunderstanding resulted in an inflated guideline calculation, including duplicative enhancements, despite the fact that Shores admitted guilt to only one count. Such circumstances are consistent with the concerns recognized in *Bousley v. United States*, 523 U.S. 614, 618–19 (1998), where the Supreme Court held that a plea is constitutionally invalid unless it is entered knowingly, intelligently, and voluntarily. Likewise, the Second Circuit has emphasized that a defendant must have "real notice of the true nature of the charge" (*United States v. Harrington*, 354 F.3d 178, 184 (2d Cir. 2004)), and where counsel's failures cause confusion, it undermines both the plea and the sentencing process. Here, Shapiro's failure to clarify the charge and sentencing consequences mirrors ineffective assistance as discussed in *Hill v. Lockhart*, 474 U.S. 52, 59 (1985), where the Court noted that deficient advice about a plea can prejudice the defendant by leading to an involuntary plea and a harsher sentence.

2.     Failure to File Substantive Objections to the PSR

Shapiro's failure to properly challenge critical PSR findings resulted in unjust sentencing enhancements that significantly increased Shores' sentence.

a.     PSR ¶ 33 – No Identifiable Victims

Paragraph 33 of the PSR acknowledges that there were no identified victims in Shores' case. The report further states that the government's reference to an alleged 11-year-old child is not supported by any identifiable individual, and that no minors were located, interviewed, or confirmed

24

as victims. Despite this, Shores was assigned sentencing enhancements—potentially including increases for: Use of a computer to entice a minor (U.S.S.G. § 2G1.3(b)(3)); Involvement of a minor under the age of 12 (U.S.S.G. § 2G2.1(b)(1)); and Number of victims or pattern of activity (§ 4B1.5(b)).

Each of these enhancements is fact-sensitive and should only apply where the underlying facts meet the criteria set forth in the guidelines. For example, under § 2G2.1(b)(1), an enhancement for a victim under 12 requires a specific finding that a real and identified minor under that age was involved in the offense—not a fictitious or hypothetical victim from an online sting operation. Similarly, the "number of victims" or "pattern of activity" enhancements require more than ambiguous or generalized references to prior incidents or chat logs without verification of victim identity or status.

Despite this, Shapiro filed no substantive objection to paragraph 33 or to any enhancements premised on fictional or unverified minors. He failed to: Demand an evidentiary hearing or introduce testimony or records contradicting the PSR; Argue that enhancements under §§ 2G2.1 or 4B1.5 were inapplicable due to the lack of actual victims; and Raise the issue of reliability and evidentiary sufficiency of the government's claims used to justify enhancements. Additionally, Shores pled guilty to only one count arising from a fictitious sting operation; therefore, the remaining counts should not be considered, as they involved no actual victims and Shores neither met nor attempted to meet any alleged victim.

As a result, the court was permitted to adopt the PSR findings without challenge, and the guideline range was calculated using enhancements that should never have applied. The Supreme Court has made clear that when findings in the PSR are not disputed with "specificity and clarity,"

25

the court may rely on them. See *United States v. Dunnigan*, 507 U.S. 87, 95 (1993). But that reliance presumes effective representation—which was not provided here.

The failure to object to false or unsupported enhancements substantially increased Shores' offense level, resulting in a longer prison term than warranted. Enhancements for an alleged minor under 12 and for multiple victims can add multiple offense levels—often moving a defendant from a base range of 10–15 years to 30 years or life imprisonment. These increases are not discretionary—they materially alter the sentencing range under the U.S. Sentencing Guidelines, and courts frequently impose sentences near the bottom of that range

b.    The Whisper App's User Anonymity and Shores' Intent to Confirm Age

Another critical fact overlooked by defense counsel was the anonymous nature of the Whisper App, a platform that allows users to post and communicate without disclosing verifiable personal details such as age, identity, or location. On Whisper, users are not required to provide accurate demographic information, and the platform neither verifies users' ages nor provides identifying metadata to chat partners. As such, users are free to self-report any age or identity they choose, and there is no built-in mechanism for recipients to verify that information prior to in-person interaction.

Shores used the Whisper App for approximately six years. During that time, he understood—based on both the platform's terms of service and its general reputation—that it was an adult-oriented social platform. It is important to highlight that, the Whisper App's terms of use explicitly restrict access to individuals aged 17 and older, and the platform is widely regarded as being used primarily by adults for anonymous confessionals, flirting, and casual conversation, not as a meeting place for minors.

26

In this case, the person with whom Shores communicated self-identified as an adult, and there was no indication in the chat history that the user explicitly stated they were underage prior to the planned meet-up. Because of the anonymous and unverifiable nature of communications on Whisper, Shores could not confirm or disprove the individual's stated age through digital means alone.

Therefore, the lunch meet-up on or about August 10, 2023, was not an act of criminal intent or enticement, but rather the first and only opportunity Shores had to confirm whether the individual was in fact an adult, as he had been led to believe. Shores did not suggest any sexual activity, did not exchange sexually explicit photographs, and the meet-up was explicitly non-sexual in nature, involving only the delivery of lunch.

Had defense counsel Shapiro investigated or properly presented the technological and practical limitations of the Whisper App, as well as Shores' consistent belief that he was interacting with an adult, this could have formed the basis for a lack of criminal intent defense. The *mens rea* element under 18 U.S.C. §§ 2251(a) and (e) requires that a defendant must have knowingly and intentionally attempted to employ, use, persuade, induce, entice, or coerce a person whom he believed to be a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct. The problem, however, is that Shores did not actually know he was communicating with a minor. Any explicit language or content he may have sent was based on his belief that all users of the Whisper app were adults. Under 18 U.S.C. §§ 2251(a) and (e), the government must prove that the defendant knowingly and intentionally attempted to use, persuade, or induce a minor to engage in sexually explicit conduct for purposes of producing a visual depiction. Without knowledge or reasonable belief that the individual was a minor, the requisite *mens rea* cannot be established. Instead, it shows a cautious and reasonable user attempting to confirm the truth behind anonymous

27

online representations. By failing to investigate this or explain it to the court, Shapiro allowed an innocuous attempt to verify identity to be misconstrued as evidence of an unlawful sexual purpose.

This failure not only contributed to the acceptance of the government's theory without challenge, but it also deprived Shores of the opportunity to argue that any apparent attempt to meet up was justified by his duty to ensure he was not speaking to a minor, as expected from someone attempting to act lawfully on an anonymous platform.

                c.       Duplicity and Improper Sentence Enhancements Based on Dismissed or Unproven Conduct

In this case, the court effectively sentenced Shores twice, despite the fact that he pled guilty only to Count 1s of the Superseding Indictment and the remaining charges were dismissed. Nevertheless, the sentencing court treated him as if he had been convicted on multiple counts, enhancing his sentence based on conduct related to other alleged victims who were never the subject of a valid conviction. This raises a serious issue of duplicity and improper sentencing.

Duplicity occurs when a single count or plea is treated as covering multiple offenses, resulting in multiple punishments for what should legally be considered only one conviction. The Supreme Court has long held that imposing multiple punishments for the same offense violates the Double Jeopardy Clause. See *Ball v. United States*, 470 U.S. 856, 861 (1985) ("[T]he second conviction, even if it results in no greater sentence, is an impermissible punishment."). Similarly, in *United States v. Kakatin*, 214 F.3d 1049, 1051 (9th Cir. 2000), the Ninth Circuit explained that a defendant cannot be punished as though he were convicted of multiple counts when he entered a plea to only one.

Moreover, sentencing enhancements based on uncharged or dismissed conduct must be narrowly applied. While the Guidelines permit "relevant conduct" under USSG § 1B1.3, courts have

28

cautioned that enhancements cannot be used to circumvent constitutional protections. The Second Circuit in *United States v. Lauersen*, 348 F.3d 329, 344 (2d Cir. 2003), warned against double-counting the same conduct in multiple ways to exaggerate the sentence. Likewise, in *United States v. Watts*, 519 U.S. 148, 156 (1997), the Court held that acquitted conduct may be considered at sentencing, but only where it is proven by a preponderance of the evidence—not simply assumed from dismissed charges.

Here, the problem is even more severe: Shores' sentence was enhanced as if he were guilty of additional counts involving other alleged victims, even though he only admitted guilt to a single count involving a fictitious sting operation with no actual victim. This produced a sentence greater than what was authorized by his plea, contravening both the principle of due process and the protections against duplicative punishment under *Ball*.

In *United States v. Randall*, 948 F.3d 1318 (5th Cir. 2019), the Fifth Circuit vacated a sentence where the district court created "pseudo-counts" under U.S.S.G. § 2G2.1(d)(1) to account for uncharged victims, inflating the Guidelines range to life imprisonment. The court emphasized that such pseudo-counts are permissible only if the alleged conduct qualifies as relevant conduct under § 1B1.3.

Similarly, in *United States v. Wernick*, 691 F.3d 108 (2d Cir. 2012), the Second Circuit held that uncharged acts with other minors could not be used as relevant conduct to increase the offense level for an enticement conviction. The court explained that while uncharged acts may be considered under 18 U.S.C. § 3553(a), they cannot form part of the Guidelines calculation unless they meet the definition of relevant conduct.

The First Circuit reached the same conclusion in *United States v. Castillo*, 981 F.3d 94 (1st

29

Cir. 2020), vacating a sentence where the district court improperly applied a cross-reference to sexual abuse based on conduct not sufficiently connected to the pled offense. Without a proper relevant conduct nexus, enhancements cannot stand.

Finally, in *United States v. Schock*, 862 F.3d 563 (6th Cir. 2017), the Sixth Circuit underscored the dangers of duplicity and improper sentencing practices that effectively punish defendants for unadmitted or dismissed allegations. Such practices distort the offense of conviction and raise serious constitutional and procedural concerns.

These cases make clear that Shores' sentence was procedurally flawed. The court treated dismissed and unproven allegations as though they were separate counts, contrary to the limitations of relevant conduct. Had the court properly applied § 1B1.3, Shores' Guidelines range would have been significantly lower, and his ultimate sentence would have reflected only the offense to which he actually pled guilty.

In sum, Attorney Shapiro's failure to file substantive objections to the PSR constituted constitutionally deficient performance under *Strickland v. Washington*, 466 U.S. 668 (1984). The PSR contained materially inaccurate or unsupported assertions—particularly regarding the presence of identifiable victims, the alleged age of fictitious victims, and the application of specific offense characteristics and enhancements. By failing to challenge these key factual findings and legal assumptions, counsel allowed the sentencing court to adopt erroneous conclusions that significantly increased Shores' guideline range and ultimate sentence.

Had counsel fulfilled his professional obligation to investigate and contest the PSR with specificity and evidentiary support, the sentencing court almost certainly would have imposed a substantially lower sentence. The Eighth Circuit has long held that sentencing is a critical stage of

30

criminal proceedings where defendants are entitled to effective representation. See *United States v. Thomas*, 11 F.3d 1392, 1400 (8th Cir. 1993); *United States v. Nguyen*, 829 F.3d 907, 925 (8th Cir. 2016). When the PSR forms the factual and legal foundation of the court's sentencing decision, unchallenged inaccuracies in that report undermine both the fairness of the sentence and the integrity of the judicial process.

Because the outcome of the sentencing phase was affected by counsel's unchallenged acceptance of these flawed assertions, Shores was prejudiced, and relief is warranted.

3.      Failure to Advocate for Mitigation and Object to Substantive Unreasonableness

Defense counsel Glenn Shapiro failed to present readily available and compelling mitigating evidence at sentencing, and failed to object to the substantive unreasonableness of the sentence ultimately imposed. This constitutes ineffective assistance under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), and deprived the court of the full context necessary to determine a fair and individualized sentence under 18 U.S.C. § 3553(a).

Shores had a wealth of favorable personal history that went completely unaddressed by counsel. He is an educated man, steadily employed, and a homeowner. He also maintains a stable and supportive family life, with no history of abuse, neglect, or familial dysfunction, and with no prior criminal record of any kind. None of his personal, familial, or professional history bore any connection to the allegations in this case. These facts should have strongly weighed in favor of a downward variance or non-guidelines sentence.

In addition, Shores has a well-documented history of positive community involvement. For many years, he served and led to hundreds of Boy Scouts and Girl Scouts ("Scouting USA"),

31

attending numerous multi-day youth camps and outings involving close supervision and mentorship of minors. Not once during that extensive period did Shores face any accusation, complaint, or concern of inappropriate conduct. This unblemished track record with youth organizations speaks directly to his character, trustworthiness, and lack of predatory behavior.

Despite these compelling facts, Shapiro failed to develop or present any of this mitigation to the sentencing court. He did not submit letters of support, personal history, employment records, or community testimonials. Nor did he request a variance or argue that a guideline sentence would be greater than necessary to accomplish the goals of sentencing, as required by 18 U.S.C. § 3553(a). The Supreme Court has made clear that sentencing courts must conduct an individualized assessment based on the facts of each case. See *Gall v. United States*, 552 U.S. 38, 50 (2007). Likewise, the Eighth Circuit has emphasized that failure to advocate for relevant mitigating factors may render a sentence substantively unreasonable. See *United States v. Feemster*, 572 F.3d 455, 461–62 (8th Cir. 2009) (*en banc*).

Moreover, by failing to object to the sentence as substantively unreasonable, counsel forfeited Shores's ability to seek meaningful appellate review. The sentence imposed did not adequately account for his lack of criminal history, extensive community service, personal stability, or other § 3553(a) factors that plainly called for leniency. As a result, Shores was prejudiced by counsel's deficient performance, as it is likely the court would have imposed a lower sentence had these factors been effectively investigated, presented, and argued.

## VI. CONCLUSION

In light of the foregoing, it is evident that Shores was deprived of his constitutional right to effective assistance of counsel at both the trial and sentencing phases of his case. Counsel's failure

32

to adequately inform Shores of the implications of his plea, properly object to inaccuracies in the PSR, and advocate for a fair and just sentence constitute deficient performance under the standards established by *Strickland*, and its progeny. These errors prejudiced Shores, resulting in a significantly harsher sentence than he otherwise would have received had counsel performed competently.

The U. S. Supreme Court has consistently held that a defendant is entitled to effective legal representation at every critical stage of a criminal proceeding, including plea negotiations and sentencing. See *Lafler v. Cooper*, 566 U.S. 156 (2012); *Missouri v. Frye*, 566 U.S. 134 (2012). Here, the failures of Shores' counsel not only undermined the fairness of the proceedings but also led to a fundamentally unjust outcome.

Had Shores been properly informed, represented, and advocated for, it is likely he would have received a substantially lower sentence. These failures deprived him of his rights under the Sixth Amendment, warranting the vacatur of his conviction and sentence.

For these reasons, Shores respectfully requests that the Court grant his § 2255 motion and order appropriate relief, including but not limited to resentencing or an evidentiary hearing to fully assess counsel's deficiencies, resolve facts in dispute between the parties and their prejudicial impact on his case, and to expand an incomplete record.

Respectfully submitted,

Dated: September 14, 2025

JOHN C. SHORES, JR.
REG. NO. 72624-510
FCI THOMSON
FEDERAL CORR. INSTITUTION
PO BOX 1002
THOMSON, IL 61285
Appearing *Pro Se*

34

**EXHIBIT 1:**
**"Letters About Alleged Victims"**



## Shapiro Riha Law LLP

GLENN A. SHAPIRO
JAMES E. RIHA
JON LANCE JABENIS
J. MICHAEL MORIARTY
TYLOR J. PETITT

### ATTORNEYS AT LAW
WWW.THEOMAHALAWYERS.COM

May 14, 2024

1001 Farnam Street
Third Floor
Omaha, NE 68102-1817
Telephone
(402) 341-0700
Facsimile
(402) 341-3380

Mr. John Shores
c//o Saunders County Jail
387 N. Chestnut Street
Wahoo, Nebraska 68066


RE:  Case Update

Dear John:

Your case is set for Jury trial May 28, 2024. You have rejected the most recent plea offer from the government that involves an 11(C)(1)(c) agreement capping your sentencing range from 180-240 months.

As I have told you previously, the government has identified and located one of the minors involved in online conversations with you. She lives in Omaha, Nebraska and the Government intends to call her as a witness at trial. She was twelve (12) years old at the time of your online interaction with her.

I know you intend on proceeding to trial against my advice. Should you change your mind, I would need to know by May 22, 2024, in order to cancel that trial and get the paperwork signed by you before May 28, 2024. Monday, May 27, 2024 is a holiday and the Court's will be closed.

Sincerely,

Glenn A. Shapiro



# Shapiro Riha Law LLP

**GLENN A. SHAPIRO**
**JAMES E. RIHA**
**JON LANCE JABENIS**
**J. MICHAEL MORIARTY**
**TYLOR J. PETITT**

## ATTORNEYS AT LAW
WWW.THEOMAHALAWYERS.COM

March 11, 2024

1001 Farnam Street
Third Floor
Omaha, NE 68102-1817
Telephone
(402) 341-0700
Facsimile
(402) 341-3360

Mr John Shores
c/o Saunders County Jail
387 N. Chestnut street
Wahoo. Nebraska 68066

RE: Federal Case

Dear John:

I received several messages last week from you stating you want a deal with a cap of 24 months, then a cap of 36 months, etc.

You and I have discussed your charges, the evidence and the penalties thoroughly. One of your charges has a 15 year mandatory minimum sentence. Four of your charges carry a mandatory 10 year minimum. It is impossible to get a sentence in the range you have requested. A conviction on any of those counts referenced above has sentencing ranges starting at 180 months and 120 months, respectively. Those are mandatory minimum penalties that have to be imposed upon conviction.

I have also advised you that a conviction at trial could result in a life sentence under the Federal Sentencing Guidelines. I have discussed with you a Rule 11(C)(1)(c) agreement that has a sentencing range of 235 months to 293 months. I have advised you to accept the plea agreement, as has your family.

Individual 2 has been identified as a 14 year old female. Authorities have spoken to her mother and verified the number you and individual 2 were communicating thru was her daughters. Your request for 24 months, etc has me concerned about your mental status and whether you understand the position you are in. The March 25, 2024 trial date is going to be continued. I will see you again soon to discuss whatever you like and if yo want to reject the plea agreement and go forward with trial, I will need time to prepare you for your testimony.

Sincerely,

Glenn A. Shapiro



## Shapiro Riha Law LLP

GLENN A. SHAPIRO
JAMES E. RIHA
JON LANCE JABENIS
J. MICHAEL MORIARTY
TYLOR J. PETITT

ATTORNEYS AT LAW
WWW.THEOMAHALAWYERS.COM

1001 Farnam Street
Third Floor
Omaha, NE 68102-1817
Telephone
(402) 341-0700
Facsimile
(402) 341-3380

May 15, 2024

Mr. John Shores
c/o Saunders County Jail
387 N. Chestnut Street
Wahoo, Nebraska 68066

RE: Case Update

Dear John:

The U.S. Attorney provided additional reports today: 35 pages of another conversation with a female party who states they are 17 years old. The conversation you engage in is very similar to the other online conversations and contains several problematic statements by you. The government will continue to disclose evidence as it becomes available.

Based on our many in-person conversations at corrections, you may not care about this additional evidence, but I wanted to make you aware of this and as my letter yesterday stated, you can accept the plea agreement up until a few days before we begin trial.

Sincerely,

Glenn A. Shapiro

JOHN C. SHORES, JR.
REG. NO. 72624-510
FCI THOMSON
FEDERAL CORR. INSTITUTION
PO BOX 1002
THOMSON, IL 61285

October 14, 2025

Ms. Denise Lucks
Clerk of Court
U. S. District Court
District of Nebraska
Omaha Division
111 South 18th Plaza, Suite 1152
Omaha, NE 68102

   RE: *Shores v. United States*
      Civil No. 8:25-cv-00517-RFR
      Crim No. 8:23-cr-00174-RFR-MDN-1

Dear Ms. Lucks:

  Enclosed please find and accept for filing Movant's Memorandum of Law in Support of Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. Please submit this document to the Court.

  Thank you for your assistance in this matter.

         Sincerely,

         JOHN C. SHORES, JR.
         Appearing *Pro Se*

*Encl. as noted*

RECEIVED

OCT 2 0 2025

CLERK
U.S. DISTRICT COURT

PRESS FIRMLY TO SEAL         PRESS FIRML



# UNITED STATES POSTAL SERVICE ®

## PRIORI MAIL

- Expected delivery date specified for domestic use.
- Domestic shipments include $100 of insurance (restrictions apply).*
- USPS Tracking® service included for domestic and many international
- Limited international insurance.**
- When used internationally, a customs declaration form is required.

*Insurance does not cover certain items. For details regarding claims exclusions see the Domestic Mail Manual at http://pe.usps.com.

** See International Mail Manual at http://pe.usps.com for liability and limitations of cov

To schedule free P scan the Q

# FLAT RATE ENVELOPE
ONE RATE ■ ANY WEIGHT



# TRACKED ■ INSURED

USPS.COM



PS00001000014

EP14F October 2023
OD: 12 1/2 x 9 1/2



---

## UNITED STATES POSTAL SERVICE.

## Click-N-Ship®

usps.com
$8.40
US POSTAGE

**P**

9405 5301 0935 5224 2716 89 0084 0000 0708 8102



U.S. POSTAGE PAID



10/14/2025
0 lb 8 oz

Mailed from 61285    253345573366812

## PRIORITY MAIL®

REG. NO. 72624-510, FCI THOMSON, FEDERAL CORR. INS Created 10/14/2025
JOHN C SHORES, JR.
PO BOX 1002
THOMSON IL 61285-1002

RECEIVED

Flat Rate Envelope
**RDC 03**

**C016**

OCT 2 0 2025
CLERK
US DISTRICT COURT



CLERK OF COURT, DISTRICT NEBRASKA
DENISE LUCKS
STE 1152
111 S 18TH PLZ
OMAHA NE 68102-1322

## USPS TRACKING #



9405 5301 0935 5224 2716 89



This package is made from post-consumer waste. Please recycle - again.

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® and Priority Mail International® shipments. Misuses may be a violation of federal law. This package is not for resale. EP14F © U.S. Postal Service; October 2023; All rights reserved.