IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, Plaintiff, | ) | 8:23CR174 |
| vs. | ) | |
| JOHN C. SHORES, JR., Defendant. | ) | Omaha, Nebraska August 23, 2024 |

TRANSCRIPT OF SENTENCING PROCEEDINGS
BEFORE THE HONORABLE ROBERT F. ROSSITER, JR.
CHIEF UNITED STATES DISTRICT JUDGE

A-P-P-E-A-R-A-N-C-E-S

FOR THE PLAINTIFF: Mr. Sean P. Lynch
Asst. United States Attorney
1620 Dodge Street
Suite 1400
Omaha, NE 68102

FOR THE DEFENDANT: Mr. Glenn A. Shapiro
Attorney at Law
1001 Farnam Street
Third Floor
Omaha, NE 68102

COURT REPORTER: Ms. Brenda L. Fauber, RDR, CRR
111 South 18th Plaza
Suite 3122
Omaha, NE 68102
(402) 661-7322

Proceedings reported by certified stenographer, transcript produced with computer.

(At 2:31 p.m. on August 23, 2024, with counsel for the parties and the defendant present.)

THE COURT: We are on the record in Case 23CR174, United States of America versus John C. Shores, Jr.

We are here for -- this was scheduled for sentencing. We also have another motion we'll take up before that.

Who appears for the government today?

MR LYNCH: Good afternoon, your Honor. Sean Lynch appearing on behalf of the United States.

THE COURT: All right. Good afternoon.

And for the defendant?

MR. SHAPIRO: Good afternoon, Judge. I'm Glenn Shapiro. I am present with John Shores.

THE COURT: All right. We're going to take up -- first of all, we're going to take up filing number 79 which is Mr. Shores' motion to withdraw his plea of guilty.

I've reviewed the brief and the motion there at 78 and 79. 78 is the motion and I've read the brief. I have reviewed the rough draft transcript of the change of plea hearing on May 30th, 2024. I've reviewed Eighth Circuit case law. I've reviewed Rule 11 of the Federal Rules of Criminal Procedure in this case.

The brief indicates that Mr. Shores believes he is innocent of the charges in the superseding indictment. That is the basis -- at least the written basis for this motion.

I'll now hear from you, Mr. Shapiro.

MR. SHAPIRO: Thank you, your Honor.

Following the Rule 11 plea hearing and in preparation for sentencing, there was a presentence report that was completed. Obviously, it was shared with the parties.

THE COURT: Can you bring the microphone a little closer?

MR. SHAPIRO: Yes, sir.

Once the parties received the presentence investigation, Mr. Shores had contacted me on numerous occasions with concerns about his plea.

And after a lot of discussion, he directed counsel to file the motion to withdraw his plea based on the singular sentence that he believes he's innocent of the charges and the charge particularly that he had entered a guilty plea to. So I filed it.

I would ask the Court to take judicial notice of the filings, the pleadings in this case.

I'm well aware of the plea agreement signed in this case. I'm well aware of the conversation, dialogue under oath you had with my client during the plea hearing that has taken place.

But Mr. Shores still requested that I ask the Court to allow him to withdraw his plea and so I would submit it on that. The argument was set out in my brief.

And again, I'm well familiar with the government's response to that and the case law and the plea agreement that's in effect.

And so Mr. Shores has asked you to allow him to withdraw his plea if you feel it's warranted under the law and the facts and submit it to you with the record and filings that you've reviewed in preparation for this request.

THE COURT: All right.

Government's position on this motion? And I've read your submissions, but...

MR LYNCH: Yes, your Honor.

Your Honor, I believe the government's submission was filing 80. The government stands by the arguments made in filing 80.

Just in brief summation, your Honor, there is a plea agreement in place in this case. Under Section VIII(E) of the plea agreement, Mr. Shores waived his right to withdraw his plea of guilty pursuant to Federal Rule of Criminal Procedure 11(d). Such a waiver has been routinely upheld by the Eighth Circuit.

There's no indication from my recollection -- and I'm sure from the Court's review of the change of plea transcript -- that Mr. Shores' plea was anything but knowing and voluntary.

So that plea waiver is in effect because the Eighth

Circuit has stated these plea agreements are to be governed by general contract principles. In its very simplistic form, Judge, there's been an offer, acceptance, and there's consideration.

Judge, there's one thing I would note just as it relates to the plea agreement in the government's filing 80. On page 2, it says that as part of the consideration, it's a low-end recommendation at sentencing. That's not accurate. There's a (c)(1)(C) provision to a range. I just wanted to correct that inaccuracy since I just noticed it.

If the Court were to get beyond the waiver of the defendant's rights under Federal Rule of Criminal Procedure 11(d), the motion itself would fail on the merits.

Under 11(d), for the defendant to be able to withdraw his guilty plea after it's been accepted by the Court, he'd have to show a fair and just reason for requesting the withdrawal.

In reviewing the defendant's filings, it's just a blanket assertion of innocence. There's no specificity or elaboration other than his belief that he's innocent which is contrary to the inquiry that the Court conducted at the change of plea. It's contrary to the plea agreement and what's contained in the plea agreement as well as to the petition to enter a plea of guilty.

The case law again is voluminous that says that a mere assertion of innocence is not enough to justify the withdrawal

of the guilty plea.

Thus, for all those reasons, your Honor, I'd ask the Court to deny the defendant's motions.

THE COURT: All right.

Mr. Shapiro, I'll come back to you. Rule 11 requires -- Rule 11(d)(2)(B) -- or (d)(2) says that after the court accepts the plea, which I clearly did accept the plea of guilty at the change of plea hearing, the only basis is that if you can show a fair and just reason for requesting the withdrawal.

Beyond what you've presented in writing and presented here in court about a generalized statement of innocence, what other fair and just reasons exist here?

MR. SHAPIRO: Could I have one moment?

THE COURT: You can.

(Off-the-record discussion had.)

MR. SHAPIRO: If I may, your Honor?

THE COURT: Yes.

MR. SHAPIRO: The fair and just reasons, we'd submit, to withdraw the plea agreement [*sic*] is upon receiving the presentence report, the prosecutor's version of the offense is inaccurate and wrong.

Mr. Shores believes he did not "purpose for sex" with a minor.

THE DEFENDANT: That's the --

(Off-the-record discussion had.)

MR. SHAPIRO: Evidence in the presentence investigation states that there are no identifiable victims. However, I shared with my client and the evidence actually shows that there was a actual victim that was identified.

My client believes that the presentence indicating there were no new identifiable victims is new evidence for him to consider as part of his reason to withdraw his plea of guilty.

And further, Mr. Shores indicates that he lacked an understanding of the consequences of accepting the plea. He believed that the Court and the judge could review your history and possibly give you a suspended sentence or rule on a sentence well below the terms. And he did not know that he was ineligible for probation which is set out at paragraphs 94 and 95 of the presentence report.

Was there anything else?

(Off-the-record discussion had.)

MR. SHAPIRO: And finally, Mr. Shores would like the Court to know that he believes that during the plea negotiation process, he felt that himself and his family were being intimidated by the prosecution after they had received subpoenas to appear to testify in the event there was not a plea agreement reached.

And I'd submit it with the other information that I've already provided to the Court in the written motion and brief.

THE COURT: All right.

Having heard what your client claims are fair and just reasons for allowing him to request this withdrawal, I do note the following:

As I said, I have gone through the plea colloquy again. I have gone through the plea agreement and the factual basis in the plea agreement which, I won't read it here, but clearly indicates that -- clearly establishes that Mr. Shores -- and the colloquy established that he had agreed to everything in that factual basis. I made it clear to him that he was bound by everything in that factual basis and that it was -- he agreed that it was true and accurate.

With regard to the -- again, looking at that colloquy, with regard to the claims that he thought he was entitled to probation or something less than the 11(c)(1)(C) agreement, we went through the 11(c)(1)(C) agreement in detail. I told him and he agreed that if I accept the 11(c)(1)(C) plea agreement, he would receive a sentence somewhere in between 180 months and 240 months. He indicated -- Mr. Shores indicated that he understood that.

We went through the plea agreement in detail. He did ask on a couple of occasions if he could speak to Mr. Shapiro in confidence. I gave him that ability to do so during that hearing.

I asked after every one of those conferences which

were -- we had the white noise going on. I asked after every one of those consequences whether Mr. Shores had had sufficient time to visit with his attorney and whether or not he had his questions answered and he indicated that he had.

Specifically, within the colloquy -- at the beginning of the colloquy, I went through the elements of the count that he was pleading to. He said to me that he understood the elements: I'm sorry to hesitate, I'm just ashamed and embarrassed at my actions and I'm trying to understand what you're reading. I reminded him that if you don't understand or need time to talk to Mr. Shapiro, just let me know that. We went on from that point.

I asked him whether he had spoken in detail to Mr. Shapiro about the evidence the government had against you and you said: At length, sir.

I talked about the 11(c)(1)(C) plea agreement. We'll talk about that -- I talked about it in two -- two times in the plea colloquy. I said in that agreement if I accept it, it provides that you would receive a sentence between 180 months and not more than 200 months.

MR. SHAPIRO: 240, I believe, your Honor --

THE COURT: I'm sorry, 240.

MR. SHAPIRO: -- for the record.

THE COURT: 240 months' imprisonment.

I next asked whether you had discussed in detail with

Mr. Shapiro the plea agreement and all its provisions. You indicated that you had.

Did he answer all your questions? He did.

Do you think you understand what you've agreed to? I think so.

And that you did -- you indicated -- well, you confirmed that you voluntarily signed that agreement.

As I said, there were a couple of circumstances where I allowed you to discuss it. It took longer than normal plea colloquy, but I wanted to make sure that you understood.

We talked about the plea agreement and we talked specifically about the factual basis. I told you that, generally speaking, is what the government would expect to prove if this matter were to go to trial.

And I said do you understand that you've agreed to all of those facts and you're bound by them? You asked for time to talk to Mr. Shapiro and you said, Yes, your Honor, once you had an opportunity to talk to him.

I asked whether outside of the plea agreement has anyone made promises or any representations to you to get you to plead guilty. You answered, No, sir.

Are you doing so of your own free will? Your answer: I am, sir.

And are you pleading guilty because you're, in fact, guilty of the charge in Count I of the superseding indictment?

Your response: I am.

The factual basis was read by Mr. Lynch. And I asked you is everything in that factual basis true and accurate that Mr. Lynch had just read? I allowed you to talk -- you asked if you could ask Mr. -- your counsel another question. I allowed you that.

I asked if you've had enough time to talk to him and you said you had had enough time to talk to him and you said, yes, sir, that is factually correct.

I accepted your guilty plea at that time.

Based on the fact that I accepted the guilty plea, Rule 11(d) applies and I find that there is no showing of a fair and just reason that the plea of guilty be withdrawn -- or allow you to withdraw that plea of guilty.

Therefore, sir, we will move forward. That motion is denied.

Anything further on that issue?

MR. SHAPIRO: On that issue? Not today, your Honor.

THE DEFENDANT: Sir, may I?

MR. SHAPIRO: I'm going to suggest against my advice he doesn't ask you a question. But if he wants to...

THE COURT: I remind you that anything you say in court could be used against you here.

So I just -- I know you've been advised of that, but -- all I can do is advise you. But if you say anything that is

against your interests, it could be used here, so...

MR. SHAPIRO: Could I have just like 30 seconds, your Honor?

THE COURT: Absolutely.

(Off-the-record discussion had.)

MR. SHAPIRO: Thank you for the moment, your Honor. Is there anything you'd like to say to the Court, John?

THE DEFENDANT: No, sir.

THE COURT: All right. We will proceed to sentencing here.

I have reviewed, in preparation for this sentencing hearing, the court file, including the superseding indictment; the plea agreement; the revised presentence investigation report; the sentencing recommendation of August 14th, 2024; the defendant's adoption of the presentence report.

Does that include the revised report, Mr. Shapiro?

MR. SHAPIRO: It does, your Honor.

THE COURT: Before I move on from there, I'm assuming, given our conversations here, that you've had the opportunity to go through that report as well as the sentencing recommendation with Mr. Shores?

MR. SHAPIRO: That is correct as to both, your Honor.

THE MARSHAL: Turn around.

THE COURT: The government has adopted the presentence report. I assume that's the revised one as well.

MR LYNCH: It has, your Honor.

Your Honor, the government filed -- I don't have the filing numbers in front of me -- an adoption, and then I think it's labeled an amended adoption subsequently this past Wednesday.

THE COURT: And I understand that you now have some objections given the motion here.

I've reviewed the government's restricted sentencing memorandum at filing 73, the government's list of exhibits.

Any objection to me taking judicial notice of the government's exhibits, Mr. Shapiro?

MR. SHAPIRO: There would be no objection. I had a copy of them before today's hearing.

THE COURT: All right. So the exhibits at filing 74 and 77 -- those are the government's exhibits -- I will take judicial notice of those.

And while I'm at it, any objection to my taking judicial notice of filing number 84 which is the defendant's index of evidence?

MR LYNCH: No, your Honor.

THE COURT: All right.

Filing number 84 was a number of letters that I have -- that I have read with family and friends of Mr. Shores. We'll get to the objections here in a moment.

Any other evidence or witnesses today, Mr. Lynch?

MR LYNCH: No, your Honor.

THE COURT: Mr. Shapiro?

MR. SHAPIRO: None, your Honor.

THE COURT: And the victim that was identified, has that victim been notified of these proceedings?

MR LYNCH: She has, your Honor. And she does not wish to further proceed or cooperate -- participate in the sentencing and she has made no restitution request.

THE COURT: All right.

On May 30th, 2024, Mr. Shores pled guilty to Count I of the superseding indictment charging him with attempted sexual exploitation of a minor, a violation of Title 18, United States Code, Section 2251(a) and (e).

This is, as we've talked about, a Rule 11(c)(1)(C) plea agreement under the Federal Rules of Criminal Procedure. If I accept the plea agreement, the agreed-upon sentencing range is not less than 180 months and not more than 240 months.

I did defer acceptance of the plea agreement at the change of plea hearing pending my review of what is now the revised presentence report. We'll talk about the plea agreement here in a few moments.

But first focusing on the revised presentence report, I note that there are no objections by the defendant.

The government did -- the government had filed its motion following the filing of the motion for withdrawal of the plea.

What's the filing number on that latest -- the government's latest? Let me bring it up.

MR LYNCH: Judge, I don't have a file-stamped copy, but I believe it's probably filing 81.

COURTROOM DEPUTY: Adopting the presentence investigation report?

THE COURT: Yes.

COURTROOM DEPUTY: Yeah, filing 81.

THE COURT: Let me bring it up here.

In filing 81 -- and I've got that up here now. Sorry, I had it on my desk, but I can't put my hands on it right now but I do have it -- you indicate that you now object to the guideline calculation to the extent that defendant is being awarded reductions for acceptance of responsibility under Sentencing Guideline Section 3E1.1(a) and (b).

Go ahead, Mr. Lynch.

MR LYNCH: That's correct, your Honor. It's just a brief argument, Judge.

Given the fact that Mr. Shores has elected to file a motion to withdraw his guilty plea and is now maintaining that he is innocent of the charges, that is inconsistent and incompatible with acceptance of responsibility.

So the government is not moving for the third level and is objecting to his being awarded the two levels under 3E1.1(a), your Honor. And I've cited *United States vs.*

*Rodriguez* that says in certain circumstances that is appropriate.

So I would submit with that to the Court, your Honor.

THE COURT: All right.

Mr. Shapiro?

MR. SHAPIRO: I'm well familiar with the case law. I'd submit it.

THE COURT: All right.

I'm going to overrule the objection as it goes to the original two-point reduction. The reduction -- the government would have to move and is not moving for the third level under these circumstances. I think that's probably appropriate given the prior motion and my findings.

So I will sustain the objection to the second part of paragraph 58 which grants the one additional level and overrule the objection as to the first paragraph of paragraph numbered 58 which is the two-level downward adjustment under 3E1.1(a).

Any other objections?

MR LYNCH: No, your Honor. Thank you.

THE COURT: All right. There being no further objections, I adopt the revised presentence investigation report with that single change to paragraph 58 and any paragraphs that are affected by it.

The guideline calculations are as follows: On Count I,

divided into I and IA, the base offense level is 32; a two-level upward adjustment under 2G2.1(b)(1)(B), a two-level upward adjustment under 2G2.1(b)(6)(B), the producing sexually explicit material. The adjusted offense level on Count I is 36.

On Count IA which is Victim 2 -- that first one was Victim 1 -- the base offense level again is 32. A four-level upward adjustment under 2G2.1(b)(1)(A), the minor had not attained the age of 12 years; a two-level upward adjustment under 2G2.1(b)(6)(B); the adjusted offense level on Count IA is 38.

Multiple count adjustment, two units. The greater adjusted offense level was 38; a two-level upward adjustment for the unit adjustment; the combined adjusted offense level is 40.

Two levels of downward adjustment for acceptance of responsibility given my ruling on the objections, so the total offense level is 38.

Mr. Shores' criminal history category is I.

The guideline custodial range is 235 to 293 months. Supervised release is five years to life. The fine range is from 50,000 to 500,000. The JVTA assessment is also taken into consideration in that calculation of 5,000.

Any objections to that calculation, Mr. Lynch?

MR LYNCH: Judge, just noting my prior objection, no.

THE COURT: All right. Meaning the other two?

MR LYNCH: Yes, your Honor.

THE COURT: All right.

Mr. Shapiro, any objection?

MR. SHAPIRO: There would be no objection to that revised calculation, your Honor.

THE COURT: All right. There are no motions for departure or motions for variance.

The recommendation of the Probation Office -- and that was before we dealt with the objections -- was 235 -- I'm sorry, 210 -- 200 months was the recommendation of the Probation Office which was within the 11(c)(1)(C) agreement and also -- but was a little bit below the guideline range before I dealt with the grant of the government's objection. And the recommendation on supervised release was five years.

So I'll now hear from you, Mr. Shapiro, on the plea agreement and any allocution.

MR LYNCH: Your Honor, may I be heard real briefly?

THE COURT: Yes.

MR LYNCH: I believe that the AVAA assessment is likely applicable in this case. I apologize for not bringing it up previously.

Given the count of conviction would be the attempted production of child pornography, under the statute of conviction, I do think that the AVAA assessment could be

imposed.

It was advised at in the plea agreement and at the time of the plea. It's not in the sentencing recommendation, but I just wanted to note that for the record.

THE COURT: It is noted as a possible penalty and I did cover that at the change of plea hearing so we'll take that up at the end.

MR LYNCH: Okay.

THE COURT: All right.

Mr. Shapiro?

MR. SHAPIRO: Thank you.

(Off-the-record discussion had.)

MR. SHAPIRO: Are you going to ask if you want us to have you accept the plea agreement?

THE COURT: Yes. And --

MR. SHAPIRO: That's the question.

Can I take another minute with Mr. Shores for a minute, your Honor?

THE COURT: Absolutely, as much time as you need.

(Off-the-record discussion had.)

MR. SHAPIRO: Thank you, your Honor.

To answer your questions, your Honor, I will allocute in a second; but yes, the defendant would ask you to still accept the plea agreement between the parties.

THE COURT: All right.

MR. SHAPIRO: And as to sentencing, I would ask the Court to sentence him, of course, at the lowest end of that 11(c)(1)(C) agreement.

I realize we've just had a couple changes to the guideline calculated ranges, but I would suggest Probation's recommendation at the lower end -- they have it at 200 months -- is reasonable. I'd ask you to go to the lowest end which is 180 months.

I'm sure the government will probably comment or are about to say, "Well, so are most people in Mr. Shores' situation," but he has absolutely no record. Doesn't have any juvenile entries, he has no adult entries, he has no traffic entries.

You received several letters from his still present -- his wife, some of his children -- they're behind me in the front row -- some other friends.

They all paint a picture of who we all thought John Shores was. They're all obviously -- shocked is probably not even a good enough word for where Mr. Shores has now found himself in.

He's always conducted himself generally as we can see as a productive member of society, employed, raising his children, donated his time to other people in our community.

When this case first came out and it hit the public airwaves, because of his position within the Scouts, they

thought oh, my God, he must be like a predator within that organization.

The government put out national ads that I brought to the attention of the magistrate court during one of our detention hearings asking nationwide if anybody in the Scouts knew this guy or had victims or anything else. And I mention that because there was not a reply, not one, from a nationwide search.

Mr. Shores has always maintained he got in a very dark place. He was on the Internet and he went down and started saying and doing these things and I'm not sure he even recognized where this was taking him.

But, you have the offense conduct here, which you must balance, of course, against his lifelong other attributes.

All the letters are fairly consistent. I think they speak true to the person they all believed and knew who John Shores was. I believe at least two of his sons are here today and I believe they're standing by their father and they're hoping for the best for himself.

I think he's going to have people still in his corner when he's released from prison. There's a lot of people you see in this court, your Honor, my clients as well, that don't have the foundation and family and structure.

We know that when they get out of prison, there's a lot of recidivism. I just don't foresee that being in Mr. Shores'

future. First of all, he's not a young man and this sentence is going to be a pretty heavy penalty no matter which way you go. And he's not going to be a young man or even a middle-aged man when he's finally released, so I don't think he's going to be a threat to the public at large or anybody else.

And of course, there will be a period of time of supervised release and supervision which I believe would probably severely limit his access to online and other things. So I think this is the last we're going to see of Mr. Shores.

It's very unfortunate given his lifelong achievements and all the support he has that he finds himself here today.

But he did enter his plea. He's here to accept responsibility for whatever penalty you impose. And I would just suggest that a sentence of 180 months which is the bottom end of our (c)(1)(C) range is a substantial sentence for any person, particularly a person of my client's age with no record.

And I'd ask you to consider a sentence somewhere in that lower end of the (c)(1)(C) agreement, your Honor.

THE COURT: All right.

You talked a little bit about -- and I'll then move on to Mr. Shores -- but you talked a little bit about the supervised release. Have you had an opportunity to go through all of those supervised release conditions?

MR. SHAPIRO: Yes. They're set out in that report

that we received.

THE COURT: Right. Any objections to them?

MR. SHAPIRO: There are no objections. Those are appropriate.

THE COURT: All right.

Mr. Shores, you have a right to address the Court before I impose a sentence in this case. Do you wish to be heard?

THE DEFENDANT: (No response.)

THE COURT: Do you need to talk to Mr. Shapiro?

THE DEFENDANT: Yes, please.

THE COURT: Certainly.

(Off-the-record discussion had.)

MR. SHAPIRO: Thank you very much, your Honor.

THE COURT: All right. Do you wish to be heard, Mr. Shores?

THE DEFENDANT: Yes, sir.

THE COURT: All right. Go ahead, sir.

THE DEFENDANT: Just a moment, sir.

THE COURT: Take your time.

THE DEFENDANT: Thank you.

MR. SHAPIRO: Take a breath. When you're ready.

THE DEFENDANT: Per my lawyer's counsel, I've addressed the Court enough. I'd like to apologize to the people who are in -- I'd like to apologize to the people that are in attendance. I love them very much and I'm very sorry,

sir.

THE COURT: Thank you.

THE DEFENDANT: Yes, sir.

THE COURT: Mr. Lynch, the government's position.

MR LYNCH: "I'm an effective leader in the real world, but a naughty fellow who loves to cum with a young teen I just met today." Your Honor, that comes from government's sentencing Exhibit 4 and it's the defendant speaking with an individual who identified themselves as 14 years old and being located in Florida.

Your Honor, what the Court has in front of it is a defendant who is a wolf in sheep's clothing. He consistently tries to portray himself to the Court -- and it's also visible in his chats with minors through the government's sentencing exhibits -- to invoke his reputation and position in the community as a father, as a spiritual person, as a Scout leader to gain trust.

And meanwhile, under that trust and that facade, he is actively and constantly seeking out minors for his own sexual gratification and purposes.

The Court has presided over numerous trials of individuals who have been arrested by law enforcement following stings like what took place in this case. The Court's probably the most experienced in the district, if not the circuit or the country, in sentencing over these.

And in the Court's prior sentencing practices, it appears that the Court takes a discerning look at what the defendant's conduct is and the extent of it. And usually that comes from a review of the defendant's electronic devices.

Mr. Shores is different than the vast majority of defendants that have come before this Court for sentencing. He's similar in that he has very limited criminal record. But what makes him different is the extent and the pervasiveness of the sexual chats in the pursuit of children in those chats.

I don't want to speak for Probation if that recommendation is still 200 months following the updated guideline calculation after the Court's resolution of the objections today. But if the Court --

THE COURT: And I didn't mean to say that. I have not asked what their recommendation is. That was a prior recommendation. It was below guidelines.

MR LYNCH: Understood, your Honor. I guess my point would be if the Court were to go with Probation's prior recommendation of 200 months, it would be equivalent of a 36-month variance.

Given the defendant's conduct in this case, the sentencing exhibits before the Court, his refusal to accept responsibility, that's not warranting of a three-year variance when it comes to the sentence to be imposed.

The biggest thing that I have -- objection I have with

Probation's recommendation is in its rationale, where it describes the defendant's conduct in this case as an anomaly. If the Court were to read on to the next paragraph in that recommendation, the probation officer acknowledges that this conduct took place over the course of years.

An anomaly and conduct persisting over a course of years, your Honor, I would say and I would assert that those are incompatible with one another. It's not an anomaly, it's the defendant's character.

And in reviewing the vulgar, graphic, and pervasive chats -- and I'll spare the Court reiterating or quoting further -- it's concerning, it's alarming, it's a danger to the community, and it's not an isolated act.

The defendant sought out children as young as 11 years of age and there's multiple chats that have been provided to the Court. The Court can certainly read what his intent and his plans were with that.

I do believe a 240-month sentence is appropriate in this case. It's the high -- it's the top of the government's -- or the parties' 11(c)(1)(C) range. At this point, it's just five months over the low end of the advisory guideline range. So it is a guideline sentence and I think that would be appropriate in this case.

I would ask that Mr. Shores be placed on a lifetime term of supervised release given the conduct and the pervasiveness

of the chats in this case.

And I would submit to the Court for the purposes of JVTA and AVAA.

THE COURT: Mr. Niles, could you come forward?

(Off-the-record discussion had.)

THE COURT: For the record, I was just confirming with Mr. Niles the applicability of the AVAA as we had discussed earlier.

All right. Having reviewed the revised presentence report, the guidelines, the relevant sentencing factors, and the parties' arguments, I now accept the defendant's plea agreement with the government and will include the agreed disposition in the judgment.

In the plea agreement, the government agreed to dismiss at the time of sentencing Counts II, III, IV, V, VI, and VII of the superseding indictment as well as dismiss the indictment.

Does the government so move?

MR LYNCH: Yes, your Honor.

THE COURT: Consistent with the plea agreement and on motion of the government, with regard to the superseding indictment as against Mr. Shores, Counts II, III, IV, V, VI, and VII are dismissed.

In addition, the original indictment against Mr. Shores is dismissed again on motion of the government and consistent

with the plea agreement.

Is there any legal reason why I should not impose a sentence at this time, Mr. Lynch?

MR LYNCH: No, your Honor.

THE COURT: Mr. Shapiro?

MR. SHAPIRO: I'm not aware of any legal reason, your Honor.

THE COURT: Mr. Shores, I don't -- I don't argue with what you've done and I don't discount with what you've done in the community in the light. What happened here happened in the darkness.

Those chats in the government's exhibits, the photos, what you've agreed to in the factual basis here, to me is unfathomable and it doesn't relate to what you've done in the community. But the fact remains is it happened; it happened on a number of occasions. And we may not ever know the reach of that. But I've got before me what I know from the discovery and that's enough.

So I find that the following sentence should be and hereby is imposed:

Consistent with the plea agreement and consistent with the guidelines that have been calculated here, you are committed to the custody of the United States Bureau of Prisons for a term of 240 months.

I will recommend that you receive credit for time served.

I am assuming as close to Omaha as possible?

MR. SHAPIRO: Yes, your Honor.

THE COURT: I will make that recommendation.

Upon release from imprisonment, you're placed on a period of supervised release of 20 years. That is subject to the standard conditions as well as those mandatory and special conditions that are set forth on pages 19 through 21 of the revised presentence report.

And you had indicated, Mr. Shapiro, both that you had gone through all of those with your client and there were no objections; is that correct?

MR. SHAPIRO: That is correct. They were contained in the revised report.

THE COURT: And do you have any questions whatsoever, Mr. Shores, about the conditions that will apply to you upon your release?

THE DEFENDANT: I don't remember all of those conditions, but I don't have any questions that I can remember.

THE COURT: Well, let's make sure that you're aware of all of them. I'll give you an opportunity to go through those with Mr. Shapiro again.

(Off-the-record discussion had.)

THE COURT: Have you had a chance to read through all of those conditions with Mr. Shapiro?

THE DEFENDANT: Yes, sir.

THE COURT: Do you have any question about any of the conditions?

THE DEFENDANT: No, sir.

THE COURT: All right. I find that each of those conditions are reasonable and appropriate given the charge here and given your background and circumstances.

No restitution has been requested so it won't be awarded. A fine is not recommended. You will pay a special assessment of $100. That's due and payable immediately to the clerk of the court.

I'm not going to impose a JVTA assessment; but the AVAA assessment, I'm going to impose in the amount of $7500.

You have a right to appeal from my decision, sir, within 14 days. If you cannot afford to pay the costs of an appeal or to pay for an attorney to represent you on appeal, you can apply to the court to have the filing fee waived and you can also apply for court-appointed counsel.

When we went through the plea agreement in May, we talked about the appeal waiver that is in the plea agreement. If you have any questions about that appeal waiver, the extent of the appeal waiver, its exceptions, if you have any questions about the appeal process or you wish to appeal, those are all things that you should discuss with Mr. Shapiro.

Do you understand that, sir?

THE DEFENDANT: Yes, sir.

THE COURT: I do have -- as I said, I'm very concerned and confused about what went on here, but it was a horrible crime or crimes.

I do note, and I am optimistic, when I see this many people in the courtroom here to support you and what I've read in the letters and what I've heard from others in the community. I think that's important. It's certainly important while you're incarcerated and will certainly be important once you move into supervised release. So I wish you the best of luck, sir, going forward.

Is there anything further from the government, Mr. Lynch?

MR LYNCH: Judge, just to clarify. I might have missed it, but is the Court imposing a $100 special assessment?

THE COURT: I did -- I think I did.

MR. SHAPIRO: You did.

MR LYNCH: I apologize if I missed it.

THE COURT: No, that's fine.

MR LYNCH: That's the only thing I have.

THE COURT: All right.

Anything further, Mr. Lynch?

MR LYNCH: No, your Honor.

THE COURT: Mr. Shapiro?

MR. SHAPIRO: Not today, no, your Honor. Thank you.

THE COURT: We are adjourned. Thank you.

(Off-the-record discussion had.)

THE COURT: Counsel, let's go back on the record here.

I might have said it earlier but -- we're back on the record with counsel and the defendant present.

With the objections we dealt with and the earlier issues we dealt with, I want to make a record that in looking at all of the 3553(a) factors, I would have arrived at the same sentence here of 240 months. But I wanted to make a record on that.

Anything further from that, Mr. Lynch?

MR LYNCH: No, your Honor.

THE COURT: Mr. Shapiro?

MR. SHAPIRO: No, sir.

THE COURT: We're adjourned now.

Thank you.

(Adjourned at 3:27 p.m.)

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

*/s Brenda L. Fauber* — November 13, 2025

Brenda L. Fauber, RDR, CRR — Date