IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

THE UNITED STATES OF AMERICA, ) Case No. 8:23CR174
)
Plaintiff, )
)
vs. )
)
JOHN C. SHORES, JR., )
) Omaha, Nebraska
Defendant. ) May 30, 2024

TRANSCRIPT OF PLEA PROCEEDINGS
BEFORE THE HONORABLE ROBERT F. ROSSITER, JR.
CHIEF UNITED STATES DISTRICT JUDGE

A-P-P-E-A-R-A-N-C-E-S

FOR THE PLAINTIFF: Mr. Sean P. Lynch
Assistant U.S. Attorney
1620 Dodge Street, Suite 1400
Omaha, Nebraska 68102

FOR THE DEFENDANT: Mr. Glenn A. Shapiro
Shapiro Riha Law LLP
1001 Farnam Street, 3rd Floor
Omaha, Nebraska 68102

COURT REPORTER: Ms. Susan M. DeVetter, RDR, CRR
Official Court Reporter
Hruska Courthouse, Suite 3130
111 South 18th Plaza
Omaha, Nebraska 68102-1322
(402) 661-7309

Proceedings recorded by certified stenographer, transcript produced with computer.

(At 2:00 p.m. on May 30, 2024; with counsel and the defendant present:)

THE COURT: All right. We're on the record in Case 23CR174, United States of America versus John Shores, Jr. We're here for a change-of-plea hearing.

Who appears for the government?

MR. LYNCH: Good afternoon, Your Honor. Sean Lynch appearing on behalf of the United States.

THE COURT: Good afternoon. And for the defendant?

MR. SHAPIRO: Judge, good afternoon. I'm Glenn Shapiro. Mr. Shores is present with counsel.

THE COURT: Good afternoon.

Mr. Shores, as I understand it, the purpose of this hearing is to have you change your plea of not guilty to a plea of guilty under a plea agreement. Is that your understanding?

THE DEFENDANT: Yes, Your Honor.

THE COURT: All right. Can you move that microphone a little closer to you. Thank you.

THE DEFENDANT: Yes, Your Honor.

THE COURT: In order to do that, I need to ask you some questions under oath, so I would ask that you raise your right hand and be sworn.

MR. SHAPIRO: Stand up.

THE COURT: No, you can --

MR. SHAPIRO: Oh, okay.

THE COURT: You can remain seated. That's fine.

MR. SHAPIRO: Okay.

(The defendant was sworn.)

THE COURT: All right. You've sworn to tell the truth. Do you understand if you don't tell the truth here today, that there could be consequences to that, including a separate action for perjury or making a false statement?

THE DEFENDANT: Yes, Your Honor.

THE COURT: I want to make sure that you understand everything that's going on here today, so if at any time you have a question, you want to have something repeated, or you need to speak to Mr. Shapiro in confidence, will you let me know that?

THE DEFENDANT: Yes, sir. Yes, Your Honor.

THE COURT: All right. You are 54 years old?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And you have your bachelor's degree?

THE DEFENDANT: I do.

THE COURT: In what, sir?

THE DEFENDANT: Business management.

THE COURT: All right. You've never been treated for any type of drug or alcohol addiction; is that correct?

THE DEFENDANT: Yes, sir, that's correct.

THE COURT: You've never been treated for any type of mental health or emotional condition. Is that correct?

THE DEFENDANT: That's correct.

THE COURT: Are you under the influence of any drugs or alcohol as you sit here today?

THE DEFENDANT: No, Your Honor.

THE COURT: Is there any medical condition or other reason that I should be aware of that might affect your decision-making today?

THE DEFENDANT: No, Your Honor.

THE COURT: Is there any medicine you're supposed to be taking that you have not taken?

THE DEFENDANT: No, Your Honor.

THE COURT: Have you received a copy of the Superseding Indictment, that is, the charges against you in this case?

THE DEFENDANT: Yes, I have.

THE COURT: Have you discussed that Superseding Indictment with Mr. Shapiro?

THE DEFENDANT: Yes.

THE COURT: Do you have any complaints about Mr. Shapiro or his legal representation?

THE DEFENDANT: I do not.

THE COURT: You're asking me to allow you to plead guilty to Count I of the Superseding Indictment, and that charges you with attempted production of child pornography, a violation of 18 United States Code, Section 2251(a) and (e).

THE DEFENDANT: No --

THE COURT: If that --

THE DEFENDANT: No, sir, that's not correct.

THE COURT: What is not correct?

THE DEFENDANT: Count I is not production of child pornography. I've never done that.

(Mr. Shapiro conferred with the defendant.)

MR. LYNCH: Your Honor, if I may?

THE COURT: Yes.

MR. LYNCH: Your Honor, I believe that there's an "attempt" language in Count I of the Indictment, so I believe you could characterize it as "attempted production of child pornography."

THE COURT: All right. And that's what I had said.

MR. LYNCH: I apologize if you did, Your Honor.

THE COURT: Yeah. I had said -- well, let me repeat it.

Count I of the Superseding Indictment charges you with attempted production of child pornography, a violation of Title 18, United States Code, Section 2251(a) and (e).

Is that your understanding, sir?

THE DEFENDANT: A visual depiction of such conduct? Yes, sir.

THE COURT: All right. I'm gonna go through the elements of that with you. And this is what the government

would have to prove to a jury. The elements are as follows:

First, you intentionally and knowingly attempted to use -- or to employ, use, persuade, induce, entice, or coerce a minor to engage in sexually explicit conduct.

Second, you believed during that time period alleged that the minor was under the age of 18.

Third, you did so with the purpose of producing or transmitting a visual depiction of such sexually explicit conduct, including any photograph, film, video, picture, or computer or computer-generated image or picture.

Fourth, you attempted to produce such a visual depiction using materials that were mailed, shipped, or transported, including by phone or computer, in interstate commerce.

And, fifth, you took a substantial step towards the commission of that offense.

Do you understand that those are the elements the government must prove beyond a reasonable doubt before you could be convicted of Count I?

THE DEFENDANT: Yes, sir, I understand. I'm sorry to hesitate. I'm just ashamed and embarrassed at my actions and I'm trying to understand what you're reading.

THE COURT: All right. All right. And as I told you, if you don't understand or if you need time to talk to Mr. Shapiro, just let me know that.

THE DEFENDANT: I'm just trying to see where you're

reading from. I see three of the five. I just didn't see the other two.

THE COURT: Do you need me to go through them again?

THE DEFENDANT: Yes, sir, if you wouldn't mind.

THE COURT: All right. Here are the elements.

First, you intentionally and knowingly attempted to employ, use, persuade, induce, entice, or coerce a minor to engage in sexually explicit conduct.

Second, you believed during that time period alleged that the minor was under the age of 18.

Third, you did so with the purpose of producing or transmitting a visual depiction of such sexually explicit conduct, including any photograph, film, video, picture, computer or computer-generated image or picture.

Fourth, you attempted to produce such a visual depiction using materials that were mailed, shipped, or transported, including by phone or computer, in interstate or foreign commerce.

And, finally, you took a substantial step toward the commission of that offense.

Do you understand that that's what the government must prove?

THE DEFENDANT: Yes, sir, I understand.

THE COURT: Do you have any question about that charge or what the government must prove?

THE DEFENDANT: No, sir.

THE COURT: And have you spoken to Mr. Shapiro about the evidence the government has against you in this case?

THE DEFENDANT: At length, sir.

THE COURT: All right. I'm gonna do the following, I'm gonna go through the penalties you face under the law. We'll talk about your plea agreement, and we'll talk a little bit about the sentencing guidelines, because all of those things can affect your ultimate sentence here.

Under the law you face imprisonment of not less than 15 years and not more than 30 years, a fine of not more than $250,000, or both imprisonment and a fine; a supervised release term of not less than five years and up to life in addition to that term of imprisonment; a special assessment in the amount of $100; and additional special assessments of 5,000 and 50,000 dollars; next, registration as a sex offender under an applicable jurisdiction sex offender registry; and finally, possible ineligibility for certain federal benefits. And I shouldn't have said "finally" because you also may be ordered to pay restitution to any victim under the law.

All right. Do you understand these possible penalties?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And do you understand that as part of any sentence, if I were to place you on what's called supervised release, that that would come with conditions attached and if

you violated any of those conditions, you could be jailed for that reason?

THE DEFENDANT: Yes, Your Honor.

THE COURT: All right. The United States Sentencing Commission has issued guidelines containing what that Commission has determined are appropriate sentencing ranges for convicted federal offenders. Those calculations are based on a number of factors that will be dealt with in detail in your presentence investigation report and that of course we'll talk about at the time of your sentencing.

Now, the plea agreement you've entered into is what we call a Rule 11(c)(1)(C) plea agreement, which we'll talk about again in a few minutes. But that agreement, if I accept it, provides that you would receive a sentence between 180 months and not more than 240 months imprisonment. Again, we'll talk about that in a few moments.

But have you spoken to Mr. Shapiro about how the sentencing guidelines -- well, about the sentencing guidelines and how those might apply in your case?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you understand that I'm required to consider those guidelines as a starting point but I don't have to follow them and in fact I could sentence you outside of whatever that advisory guideline range ends up being?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you also understand that I can't determine what the appropriate guideline sentencing range will be until that presentence investigation report is prepared by our probation department and all of us, including you and Mr. Shapiro, have had a chance to review that and critique it?

THE DEFENDANT: Yes, Your Honor.

THE COURT: All right. Let's take a look at your plea agreement. Do you have a copy of that in front of you?

THE DEFENDANT: Yes. Yes, Your Honor.

THE COURT: Were you able to read and understand that, Mr. Shores?

THE DEFENDANT: Yes, I was.

THE COURT: Did you talk to Mr. Shapiro in detail about that plea agreement and all of its provisions?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Did he answer any and all questions you had relating to the plea agreement?

THE DEFENDANT: He did.

THE COURT: Do you think you understand what you've agreed to?

THE DEFENDANT: I think so.

THE COURT: All right. And did you voluntarily sign this plea agreement?

THE DEFENDANT: I did voluntarily sign this plea agreement.

THE COURT: All right. I'm gonna have Mr. Lynch, who is the lawyer for the government, walk through the main terms of this plea agreement here in open court. I want you to listen to what he has to say because I want to be sure it's what you think you've agreed to, okay?

THE DEFENDANT: Yes, Your Honor.

THE COURT: All right. Mr. Lynch.

MR. LYNCH: Yes, Your Honor.

Mr. Shores, the main terms of your plea agreement are as follows:

Today you're agreeing to plead guilty to Count I of the Superseding Indictment. In exchange, the United States will move to dismiss Counts II, III, IV, V, VI, and VII of the Superseding Indictment, as well as the Indictment, at the time of sentencing.

This plea agreement is limited to the United States Attorney's Office for the District of Nebraska and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities.

This plea agreement was reached pursuant to the Federal Rule of Criminal Procedure Rule 11(c)(1)(C) in which the parties agree that you shall receive a sentence of not less than 180 months imprisonment and not more than 240 months imprisonment.

Additionally, the parties agree that the Court shall

impose a term of supervised release at its discretion as part of the sentence.

This negotiated agreement resolves all issues related to the case and is the appropriate disposition.

The parties agree that the facts in the factual basis paragraph of the plea agreement are true and may be considered as relevant conduct and as the nature and circumstances of the offense.

You are agreeing that the Court may require you to pay restitution to victims in -- to be determined at the time of sentencing in amounts to be determined at the time of sentencing.

Additionally, sir, you are significantly waiving your right to appeal as well as collaterally attack this conviction.

THE COURT: All right. Mr. Shores, is that your understanding of the basic terms of the agreement you've entered into?

THE DEFENDANT: May I ask my counsel a question, please?

THE COURT: Yes, you may.

(Mr. Shapiro and the defendant conferred.)

MR. SHAPIRO: Thank you, Your Honor.

THE COURT: Is that your understanding of the terms of the agreement, sir?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Have you had enough time to speak with Mr. Shapiro?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Has anybody made threats or promises to get you to enter into this written plea agreement?

THE DEFENDANT: No, Your Honor.

THE COURT: Have you done so of your own free will?

THE DEFENDANT: I have.

THE COURT: I want to touch upon a few of the provisions here. First of all, on page 2, it includes -- the plea agreement includes what we call a factual basis, and that's generally speaking what the government would expect to prove if this matter were to go to trial.

Do you understand that you've agreed to all of those facts and that you're bound by them?

THE DEFENDANT: One moment? Let me --

THE COURT: Certainly.

THE DEFENDANT: -- read that one more time.

THE COURT: Certainly.

THE DEFENDANT: Thank you.

Yes, Your Honor.

THE COURT: All right. And next, and what we've talked about, this is a Rule 11(c)(1)(C) plea agreement under the Federal Rules of Criminal Procedure. What that means is, if I accept this agreement at the time of sentencing, your

sentence will fall somewhere within the 100 to 200 -- 180 to 240 months range for imprisonment. Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And where it falls within that range is totally within my discretion. Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: As is the amount of any supervised release. Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: If for any reason at the time of sentencing I decide not to accept this 11(c)(1)(C) agreement, I will give you an opportunity to withdraw any plea of guilty. Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: You've also agreed to -- on page 6 and 7 to what we call, shorthand, an appeal waiver. What that generally means is once I decide on what your sentence will be, this is -- this provision is gonna make it much more difficult for you to appeal my decision to a higher court or to otherwise attack it.

There are specific exceptions set forth within that section. Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And did you discuss that appeal waiver in detail with Mr. Shapiro?

THE DEFENDANT: We did.

THE COURT: Do you have any questions about the appeal waiver or any of the provisions of this plea agreement?

THE DEFENDANT: No, Your Honor.

THE COURT: All right. Let's go back to the Petition to Enter a Plea of Guilty that we started with. Do you have a copy of that in front of you?

THE DEFENDANT: Yes, Your Honor.

THE COURT: All right. Did you -- were you able to read and understand that petition and its contents?

THE DEFENDANT: In full, yes, sir.

THE COURT: Did you discuss the petition and its contents in detail with Mr. Shapiro?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Did he answer any questions you had regarding the petition or its contents?

THE DEFENDANT: He answered all questions.

THE COURT: The information you provided and the questions that you answered in this petition, is all of that information true and accurate to the best of your knowledge?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Did you voluntarily sign this petition?

THE DEFENDANT: I did.

THE COURT: Do you have any questions about any of the information contained within the petition?

THE DEFENDANT: I do not.

THE COURT: One of the important things that petition includes is a listing of your constitutional rights. I'm gonna go through those with you one more time here before we proceed.

You have a right to plead not guilty to any offense charged against you and to persist in that plea.

You have a right to trial by jury. You are presumed innocent and the government would have to prove you guilty beyond a reasonable doubt.

You have the right to assistance of an attorney for your defense.

You would have the right to see and hear all of the witnesses and have them cross-examined in your defense.

You would have the right to decline to testify unless you voluntarily elected to do so. And if you chose not to testify or put on any evidence, that could not be used against you.

You would also have the right to subpoena witnesses to testify in your defense.

Do you understand these constitutional rights?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Did you discuss these with Mr. Shapiro?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you understand that if you plead guilty, with the exception of your right to an attorney, you will effectively give up the other constitutional rights I just

listed?

THE DEFENDANT: Could you repeat the question for me?

THE COURT: Sure. If we move forward, I'm going to ask you in a couple of questions here whether you give up all the constitutional rights that we discussed. What I'm saying is, if we go forward and you waive those rights, other than the right to an attorney, you will give up the other constitutional rights I just listed.

THE DEFENDANT: Yes, Your Honor. I understand.

THE COURT: All right. Do you have any questions at this point in the hearing of me or Mr. Shapiro?

THE DEFENDANT: No, Your Honor.

THE COURT: Do you freely and voluntarily give up the constitutional rights we just discussed and all of those rights listed in your Petition to Enter a Plea of Guilty?

THE DEFENDANT: I do.

THE COURT: I find the defendant is competent to plead; he understands the nature of the charge filed against him and the possible penalties that may be imposed; he understands his rights; he willingly, voluntarily, and knowingly waives those rights; and he fully understands the consequences of waiving those rights, including the fact that, if he pleads guilty, there will be no trial in this matter. I therefore accept the defendant's waiver of his rights.

Mr. Shores, how do you now plead to Count I of the

Superseding Indictment, guilty or not guilty?

THE DEFENDANT: Guilty.

THE COURT: All right. Has anyone, outside of the plea agreement, made promises or representations to you to get you to actually plead guilty here?

THE DEFENDANT: No, sir.

THE COURT: Are you doing so of your own free will?

THE DEFENDANT: I am, sir.

THE COURT: And are you pleading guilty because you're, in fact, guilty of the charge in Count I of the Superseding Indictment?

THE DEFENDANT: I am.

THE COURT: I'm gonna have Mr. Lynch read into the record this -- the factual basis that we talked about earlier. I want you to listen to him. I know you reread it a few minutes ago, but I'm going to have him read it in open court. I want you to listen to it. I'm gonna ask you at the end if that's, in fact, what happened.

Mr. Lynch.

MR. LYNCH: Yes, Your Honor.

Your Honor, if this matter were to proceed to trial, I anticipate the government's evidence to prove, beyond a reasonable doubt, that on or about August 4th, 2023, through August 10th, 2023, Mr. Shores, while using his cellular phone, engaged in an online conversation via the chat application

Whisper and text messages to communicate with an undercover officer who was purporting to be a 13-year-old girl. During the conversations, Mr. Shores asked the other user to exchange naked and sexually explicit pictures for the purposes of masturbation. Mr. Shores also sent sexually explicit images to the other user.

On August 10th, 2023, Mr. Shores made arrangements to meet with the user that he believed to be a 13-year-old girl and arrived at the meeting location in Omaha, Nebraska, as arranged. Law enforcement contacted Mr. Shores and seized four cell phones from his vehicle. Forensic examinations of his cell phones revealed numerous sexually explicit online conversations. In one such conversation, occurring primarily between July 7th, 2020, and July 27th, 2020, Mr. Shores contacted and conversed with 13-year-old female who resided in southeastern Nebraska. That 13-year-old female has since been identified.

THE COURT: And Mr. Shores, is everything that Mr. Lynch just said true and accurate?

THE DEFENDANT: May I ask my counsel another question, please?

THE COURT: Certainly.

THE DEFENDANT: Thank you.

(Mr. Shapiro and the defendant conferred.)

MR. SHAPIRO: Thank you, Your Honor.

THE DEFENDANT: Yes, sir, that's factually --

THE COURT: All right. Have you had enough time to talk to him?

THE DEFENDANT: Yes, sir, I have.

THE COURT: All right. Go ahead.

THE DEFENDANT: Yes, sir, that's factually correct.

THE COURT: All right. All right. I find that the defendant is competent and capable of entering an informed plea to the charge against him under 18 United States Code, Section 2251(a) and (e); find he's aware of the nature of the charge and the consequences of his plea; I find that his plea of guilty is knowing, voluntary, and is supported by a factual basis concerning each essential element of the offense charged.

I accept the defendant's guilty plea. I order that a presentence investigation report be prepared. I will take the plea agreement under advisement until I've reviewed that report.

Sentencing in this matter is set for August 23rd, 2024, at 2 p.m. in this courtroom.

In the meantime, sir, you are remanded to the custody of the United States Marshal Service.

Mr. Lynch, have we given wit- -- or victim notification?

MR. LYNCH: We have, Your Honor.

THE COURT: All right. We can take that up at sentencing.

Anything further, Mr. Lynch?

MR. LYNCH: No, Your Honor.

THE COURT: Anything further, Mr. Shapiro?

MR. SHAPIRO: Not today, Your Honor. Thank you.

THE COURT: All right. Thank you. We are adjourned.

(Recess at 2:23 p.m.)

* * *

C E R T I F I C A T I O N

I, Susan M. DeVetter, RDR, CRR, certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

*/s/ Susan M. DeVetter* — November 13, 2025

Official Court Reporter — Date