IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | | 8:23CR174 |
| Plaintiff, | | |
| vs. | | UNITED STATES'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION UNDER 28 U.S.C. § 2255 |
| JOHN C. SHORES, JR., | | |
| Defendant. | | |

COMES NOW the Plaintiff, United States of America, by and through the undersigned Assistant United States Attorney for the District of Nebraska and submits this Brief in Opposition to Defendant's Motion under 18 U.S.C. § 2255, Doc. 93, pursuant to this Court's Order on Initial Review, Doc. 94.

## PROCEDURAL BACKGROUND

Defendant, John C. Shores, Jr. ("Shores") retained attorney Glenn Shapiro ("Shapiro") to represent him in the underlying proceedings. Doc. 16. On May 30, 2024, Shores pled guilty to Count I of the Superseding Indictment, which charged Attempted Sexual Exploitation of a Minor in violation of 18 U.S.C. § 2251(a) and (e), pursuant to a plea agreement. Doc. 66. The parties agreed, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), that Shores would receive a sentence of not less than 180 months' imprisonment and not more than 240 months' imprisonment. Doc. 69. The plea agreement contained a factual basis, which stated:

> That on or about August 4, 2023, through August 10, 2023, Defendant John C. Shores, Jr., using his cellular phone, engaged in an online conversation via the chat application Whisper and text messages with an undercover officer purporting to be a thirteen-year-old girl. During the conversations, Shores asked the other user to exchange naked and sexually explicit pictures for the purpose of masturbation. Shores also sent sexually explicit images to the other user.

On August 10, 2023, Shores made arrangements to meet with the user that he believed to be a thirteen-year-old girl and arrived at the meeting location in Omaha, Nebraska, as arranged. Law enforcement contacted Defendant and seized four cell phones from Shore's vehicle. Forensic examinations of Shore's cell phones revealed numerous sexually explicit online conversations. In one such conversation, occurring primarily between July 7, 2020, and July 27, 2020, Shores contacted and conversed with 13-year-old female who resided in southeastern Nebraska; this 13-year-old female has been identified.

*Id.* at 2. Shores also agreed to significantly limit his ability to appeal in his plea agreement by giving up his right to appeal and collaterally attack his conviction to include the reasonableness of the sentence. *Id.* at 6–7.

Shores was sentenced on August 23, 2024, to 240 months' imprisonment. Doc. 91.[1] On August 25, 2025, Shores filed a Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence. Doc. 93. In this Motion, Shores alleges various allegations of Ineffective Assistance of Counsel at both the Pre-Trial and Sentencing phases of his case. *Id.*  The Court reviewed Shores' motion and entered an Order on Initial Review on September 17, 2025, giving Shores until October 15, 2025, to submit his proposed Memorandum of Law and the United States until November 14, 20245, to respond. Doc. 94. Shores filed his Memorandum of Law with attached exhibits on October 20, 2025. Doc. 95. The United States filed a Motion to Confirm Waiver of Attorney-Client Privilege on November 6, 2025, and that Motion was granted on December 9, 2025. Doc. 97 and 104. The United States requested extensions for its Response on November 6, 2025, January 5, 2026, and February 10, 2026. Doc. 98, 106, and 109. The United States's response deadline is April 9, 2026. Doc. 110.

## **GOVERNING STANDARDS**

"Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and, if uncorrected,

---

[1] The Judgment was signed and filed on August 26, 2024.

would result in a complete miscarriage of justice." *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996). Bare assertions regarding an attorney's trial presentation are not enough to make a claim for ineffective assistance of counsel, and the burden of proof lies with the defendant. *Barger v. United States*, 204 F.3d 1180, 1181 (8th Cir. 2000); *United States v. Cronic*, 466 U.S. 648, 658 (1984) (explaining that the burden of proving ineffective assistance of counsel is on the defendant); *United States v. White*, 341 F.3d 673, 678 (8th Cir. 2003), *Kress v. United States*, 411 F.2d 16, 20 (8th Cir. 1969) ("In a § 2255 proceeding, the burden of proof with regard to each ground for relief rests upon the petitioner."). To meet this burden of proving ineffective assistance of counsel, a defendant must show first, that his counsel's performance was deficient and second, that the deficient performance resulted in prejudice. *Camacho v. Kelley*, 888 F.3d 389, 394 (8th Cir. 2018) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). In other words, to prevail on a claim of ineffective assistance of counsel, a defendant must establish that his counsel so grievously erred as to not function as the counsel guaranteed by the Sixth Amendment, and his counsel's deficient performance prejudiced his defense. *Auman v. United States*, 67 F.3d 157, 162 (8th Cir. 1995) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).

This two-pronged "*Strickland*" test requires a defendant to overcome the strong presumption that his or her counsel's performance was reasonable under the circumstances. A court's review of the first prong "is highly deferential, and we 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]'" *Camacho*, 888 F.3d at 394 (quoting *Strickland*, 466 U.S. at 689). "It is only when the lawyer's errors were so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment that Strickland's first prong is satisfied." *Buck v. Davis*, 580 U.S. 100, 118–19 (2018). "To show prejudice, [a defendant] must show a reasonable probability that absent the alleged errors

3

of counsel he would have been found not guilty." *United States v. Robinson*, 301 F.3d 923, 925 (8th Cir. 2002). "Prejudice' requires a reasonable probability that the proceeding would have ended in a different result without counsel's errors." *Auman*, 67 F.3d at 162. In cases where a defendant alleges that deficient representation caused him to plead guilty, the Supreme Court has explained that the defendant must establish a "reasonable probability that he would not have entered his plea but for his counsel's deficiency[.]" *Premo v. Moore*, 562 U.S. 115, 130 (2011) (citing *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). A court cannot accept a petitioner's allegations as true "if they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Walker v. United States*, 810 F.3d 568, 580 (8th Cir. 2016).

## ARGUMENT

Shores makes several allegations in his motion for relief on the grounds of ineffective assistance of counsel related to both the pre-trial and sentencing phases of his case. Shores's claims regarding ineffective assistance of counsel at the pre-trial phase are:

1) Counsel failed to "properly communicate the pros and cons of pleading guilty as opposed to proceeding to trial";

2) Counsel failed to "[c]onduct an adequate and independent pretrial investigation"; and

3) Counsel failed "negotiate a favorable plea deal."

Doc. 93, at 4. Shores' claims regarding ineffective assistance of counsel at the sentencing phase are:

1) Counsel failed to "[r]eview, discuss or explain the Presentence Report";

2) Counsel failed to "file substantive objections to the PSR"; and

3) Counsel failed to "argue for mitigation of punishment and object to his sentence being substantively unreasonable."

4

*Id.* at 5.

Shores claims are refuted by the record and by exhibits accompanying Shores's

Memorandum of Law and can be addressed by this Court without an evidentiary hearing.

*PRE-TRIAL ALLEGATIONS*

1. *Counsel failed to "properly communicate the pros and cons of pleading guilty as opposed to proceeding to trial"*

Shores claims that Shapiro failed to communicate the benefits of pleading guilty as

opposed to proceeding to trial. This allegation is directly refuted by exhibits that Shores attached

to his Memorandum of Law:

> I received several messages last week from you stating you want a deal with a cap of 24 months, then a cap of 36 months, etc.
>
> You and I have discussed your charges, the evidence and the penalties thoroughly. One of your charges has a 15 year mandatory minimum sentence. Four of your charges carry a mandatory 10 year minimum. It is impossible to get a sentence in the range you have requested. A conviction on any of those counts referenced above has sentencing ranges starting at 180 months and 120 months, respectively. Those are mandatory minimum penalties that have to be imposed upon conviction.
>
> I have also advised you that a conviction at trial could result in a life sentence under the Federal Sentencing Guidelines. I have discussed with you a Rule 11(C)(1)(c) agreement that has a sentencing range of 235 months to 293 months. I have advised you to accept the plea agreement, as has your family.
>
> Individual 2 has been identified as a 14 year old female. Authorities have spoken to her mother and verified the number you and individual 2 were communicating thru was her daughters. Your request for 24 months, etc has me concerned about your mental status and whether you understand the position you are in. The March 25, 2024 trial date is going to be continued. I will see you again soon to discuss whatever you like and if yo want to reject the plea agreement and go forward with trial, I will need time to prepare you for your testimony.

Your case is set for Jury trial May 28, 2024. You have rejected the most recent plea offer from the government that involves an 11(C)(1)(c) agreement capping your sentencing range from 180-240 months.

As I have told you previously, the government has identified and located one of the minors involved in online conversations with you. She lives in Omaha, Nebraska and the Government intends to call her as a witness at trial. She was twelve (12) years old at the time of your online interaction with her.

I know you intend on proceeding to trial against my advice. Should you change your mind, I would need to know by May 22, 2024, in order to cancel that trial and get the paperwork signed by you before May 28, 2024. Monday, May 27, 2024 is a holiday and the Court's will be closed.

Doc. 95, at 36–37.

Shores also alleges that Shapiro did not discuss the evidence that the United States had. This, too, is contradicted by the exhibit above as well as the record. This Court asked Shores about his conversations with Shapiro before accepting his guilty plea in this case:

> THE COURT: And have you spoken to Mr. Shapiro about the evidence the government has against you in this case?
> THE DEFENDANT: At length, sir.

Plea Transcript, 8:2–4. Shores asserts that Shapiro told him that if he pled he would only be exposed to 15–20 years of imprisonment. That information is accurate under the Rule 11(c)(1)(C) plea agreement. *See* Doc. 69. Shores also states that Shapiro stated he could face a life sentence if he were to proceed to trial, which is again accurate for Counts II, III, and VI of the Superseding Indictment. *See* Doc. 48. Shores claims that there were no identified victims, which is directly refuted by the factual basis that Shores agreed to in his plea agreement: "Shores contacted and conversed with 13-year-old female who resided in southeastern Nebraska; this 13-year-old female has been identified." Doc. 69, at 2. Shores confirmed this factual basis again on the record at his plea hearing. Plea Transcript, 19:18–20:6. Furthermore, at Shores's sentencing hearing, when addressing the motion to withdraw the guilty plea, Shapiro stated, "I shared with my client and the evidence actually shows that there was a [sic] actual victim that was identified."

6

Sentencing Transcript 7:4–5. The record demonstrates that Shapiro accurately and thoroughly communicated the benefits of pleading guilty as opposed to going to trial. This allegation is without merit.

2. *Counsel failed to "[c]onduct an adequate and independent pretrial investigation"*

Shores claims that Shapiro failed to conduct an adequate and independent pretrial investigation. Shores's claims can be summarized as alleging that if Shapiro had investigated the claims he *might* have been able to disprove that Shores had an intention to meet minors, that minors had been identified, and that Shores had intended to meet them for sexual conduct.[2] This speculative statement, which fails to specify evidence that would have been found, is insufficient to show ineffective assistance. Further, this assertion, too, is contradicted by the record. In the factual basis in Shores's plea agreement, Shores admitted:

1. That on or about August 4, 2023, through August 10, 2023, Defendant John C. Shores, Jr., using his cellular phone, engaged in an online conversation via the chat application Whisper and text messages with *an undercover officer purporting to be a thirteen-year-old girl*. During the conversations, *Shores asked the other user to exchange naked and sexually explicit pictures for the purpose of masturbation. Shores also sent sexually explicit images to the other user.*

2. On August 10, 2023, *Shores made arrangements to meet with the user that he believed to be a thirteen-year-old girl and arrived at the meeting location in Omaha, Nebraska, as arranged.* Law enforcement contacted Defendant and seized four cell phones from Shore's vehicle. *Forensic examinations of Shore's cell phones revealed numerous sexually explicit online conversations. In one such conversation, occurring primarily between July 7, 2020, and July 27, 2020, Shores*

---

[2] Shores also claims that Shapiro failed to challenge the drug quantities attributed to him. *See* Doc. 95, at 19. Shores's was not charged with a narcotics related offense nor was narcotic weight incorporated in his guidelines.

> *contacted and conversed with 13-year-old female who resided in southeastern Nebraska; this 13 year-old female has been identified.*

Doc. 69, at 2 (emphasis added). In light of the facts that Shores acknowledged, Shores has not and cannot show a reasonable probability that had he conducted further pretrial investigation, Shapiro would have been able to disprove the evidence of Shores's intent. Shores's motion should be denied.

### 3. Counsel failed to "negotiate a favorable plea deal"

Shores claims that Shapiro failed to negotiate a favorable plea deal. In his supporting Memorandum, Doc. 95, Shores largely repeats claims previously addressed by this Court during the hearing on Shores's motion to withdraw a guilty plea. Shores argument is essentially that he did not understand the charges or the evidence. While Shores likely did not understand the case and probable outcome as well as his experienced attorney did, the record shows that Shores was fully informed, had an adequate understanding of the case, and made an informed decision regarding his plea.

As this Court stated during its ruling on this motion:

> THE COURT: …. As I said, I have gone through the plea colloquy again. I have gone through the plea agreement and the factual basis in the plea agreement which, I won't read it here, but clearly indicates that -- clearly establishes that Mr. Shores – and the colloquy established that he had agreed to everything in that factual basis. I made it clear to him that he was bound by everything in that factual basis and that it was – he agreed that it was true and accurate.
>
> With regard to the -- again, looking at that colloquy, with regard to the claims that he thought he was entitled to probation or something less than the 11(c)(1)(C) agreement, we went through the 11(c)(1)(C) agreement in detail. I told him and he agreed that if I accept the 11(c)(1)(C) plea agreement, he would receive a sentence somewhere in between 180 months and 240 months. He indicated -- Mr. Shores indicated that he understood that.

8

We went through the plea agreement in detail. He did ask on a couple of occasions if he could speak to Mr. Shapiro in confidence. I gave him that ability to do so during that hearing.

I asked after every one of those conferences which were -- we had the white noise going on. I asked after every one of those consequences whether Mr. Shores had had sufficient time to visit with his attorney and whether or not he had his questions answered and he indicated that he had. Specifically, within the colloquy -- at the beginning of the colloquy, I went through the elements of the count that he was pleading to. He said to me that he understood the elements: I'm sorry to hesitate, I'm just ashamed and embarrassed at my actions and I'm trying to understand what you're reading. I reminded him that if you don't understand or need time to talk to Mr. Shapiro, just let me know that. We went on from that point. I asked him whether he had spoken in detail to Mr. Shapiro about the evidence the government had against you and you said: At length, sir. I talked about the 11(c)(1)(C) plea agreement. We'll talk about that -- I talked about it in two -- two times in the plea colloquy. I said in that agreement if I accept it, it provides that you would receive a sentence between 180 months and not more than 200 months.

MR. SHAPIRO: 240, I believe, your Honor --

THE COURT: I'm sorry, 240.

MR. SHAPIRO: -- for the record.

THE COURT: 240 months' imprisonment.

I next asked whether you had discussed in detail with Mr. Shapiro the plea agreement and all its provisions. You indicated that you had.

Did he answer all your questions? He did.

Do you think you understand what you've agreed to? I think so.

And that you did -- you indicated -- well, you confirmed that you voluntarily signed that agreement.

As I said, there were a couple of circumstances where I allowed you to discuss it. It took longer than normal plea colloquy, but I wanted to make sure that you understood.

We talked about the plea agreement and we talked specifically about the factual basis. I told you that, generally speaking, is what the government would expect to prove if this matter were to go to trial.

9

> And I said do you understand that you've agreed to all of those facts and you're bound by them? You asked for time to talk to Mr. Shapiro and you said, Yes, your Honor, once you had an opportunity to talk to him.
>
> I asked whether outside of the plea agreement has anyone made promises or any representations to you to get you to plead guilty. You answered, No, sir.
>
> Are you doing so of your own free will? Your answer: I am, sir.
>
> And are you pleading guilty because you're, in fact, guilty of the charge in Count I of the superseding indictment? Your response: I am.
>
> The factual basis was read by Mr. Lynch. And I asked you is everything in that factual basis true and accurate that Mr. Lynch had just read? I allowed you to talk -- you asked if you could ask Mr. -- your counsel another question. I allowed you that.
>
> I asked if you've had enough time to talk to him and you said you had had enough time to talk to him and you said, yes, sir, that is factually correct.

Sentencing Transcript, 8:5–11:9.

The factual basis and charges in this case make it clear that the plea agreement in this case was a significant benefit to Shores, drastically reducing his exposure in a case where the possible penalty was life imprisonment and the evidence was egregious and overwhelming. The letters from Shapiro to Shores demonstrate that Shapiro accurately conveyed the plea offer from the United States and provided advice to Shores regarding acceptance of that offer. Shores's assertion that Shapiro failed to negotiate a favorable plea deal reveals unrealistic expectations by Shores. Shores has not and cannot show that different conduct by Shapiro would have resulted in a more favorable plea agreement for Shores.

*SENTENCING ALLEGATIONS*

1. *Counsel failed to "[r]eview, discuss or explain the Presentence Report"*

Shores alleges that Shapiro failed to review, discuss, or explain the Presentence Report

10

("PSR"). This allegation is false and refuted by the record, which shows that Shapiro did review, have substantive discussions about, and attempt to explain the PSR to Shores.

Shores filed a Motion to Withdraw his Guilty Plea. Doc. 78. In the accompanying brief, Shores asserted: "A presentence investigation was ordered and a copy was provided to Defendant and his counsel on or about July 11, 2024. In early August, 2024 via telephone call, Defendant instructed counsel to request a withdrawal of his plea of guilty." Doc. 79, at 2. At the sentencing hearing, when this Court heard Shores's Motion to Withdraw, there was extensive discussion about Shores's knowledge and review of the PSR:

> Following the Rule 11 plea hearing and in preparation for sentencing, there was a presentence report that was completed. Obviously it was shared with the parties …. Once the parties received the presentence investigation, Mr. Shores had contacted me on numerous occasions with concerns about his plea.

Sentencing Transcript, 3:3–11. When Shores was pressed about the grounds he was seeking to withdraw his guilty plea, Shapiro stated "The fair and just reasons, we'd submit, to withdraw the plea agreement [sic] is upon receiving the presentence report, the prosecutor's version of the offense is inaccurate and wrong. Shores believes he did not 'purpose for sex' with a minor." Sentencing Transcript, 6:19–24. Shapiro went on to state:

> Evidence in the presentence investigation states that there are no identifiable victims. However, I shared with my client and the evidence actually shows that there was a actual victim that was identified.
>
> My client believes that the presentence indicating that there were no new identifiable victims is new evidence for him to consider as part of his reason to withdraw his plea of guilty.

*Id.* at 7:2–8. It is illogical for Shores to suggest that he was unaware of the contents of the PSR when he moved to withdraw his plea because of contents of the PSR that he did not agree with.

The PSR also contained proposed conditions for supervised release, which the Court asked Shapiro and Shores about:

11

> THE COURT: ….And you had indicated, Mr. Shapiro, both that you had gone through all of those with your client and there were no objections; is that correct?
>
> MR. SHAPIRO: That is correct. They were contained in the revised report.
>
> THE COURT: And do you have any questions whatsoever, Mr. Shores, about the conditions that will apply to you upon your release?
>
> THE DEFENDANT: I don't remember all of those conditions, but I don't have any questions that I can remember.
>
> THE COURT: Well, let's make sure that you're aware of all of them. I'll give you an opportunity to go through those with Mr. Shapiro again.
>
> (Off-the-record discussion had.)
>
> THE COURT: Have you had a chance to read through all of those conditions with Mr. Shapiro?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Do you have any question about any of the conditions?
>
> THE DEFENDANT: No, sir.

*Id.* at 29:9–30:4. This exchange also shows that Shores had reviewed the PSR prior to the sentencing hearing. Shores was present throughout this sentencing hearing and was addressed by this Court and did not raise any concerns about Shapiro's review of the PSR with him.

The record shows that Shapiro did review the PSR with Shores. Further, Shores has not and cannot show that had Shapiro behaved differently, the outcome in this case would have been different. Shores unsuccessfully attempted to withdraw his plea based on his review of the PSR. He has not identified any way that he was prejudiced by his review of the PSR. Shores's motion should be denied.

2. *Counsel failed to "file substantive objections to the PSR"*

Shores alleges that Shapiro failed to file substantive objections to the Presentence Report. This allegation, too, is baseless and Shores's motion should be denied.

First, Shores alleges that Shapiro failed to object to assert there was not an identifiable minor. Shapiro cannot be ineffective for failing to object because there was an identified minor victim in the case, and Shores acknowledged as much in the factual basis of his plea agreement. *See* Doc. 69, at 2. Further, Shores was convicted of an attempt, so the existence of an actual

12

minor was not required to prove the offense and this objection would not have changed the outcome in the case. *See United States v. Rajab*, 23 F.4th 793, 796 (8th Cir. 2022). The evidence, as repeatedly discussed on the record, showed that Shores engaged in numerous chats with underage individuals and Shores was informed of the individuals' ages and still pursued them for sexually explicit conduct or images of sexually explicit conduct, taking substantial steps to do so.

Shores also alleges that Shapiro failed to object to the use of a computer enhancement under 2G2.1(b)(6)(B). This fact, also, was accurate as shown by the factual basis in Shores's plea agreement in which Shores agreed to using a cell phone to communicate over online messaging application. *See* Doc. 69, at 2. A cell phone falls under the definition of a "computer" under 18 U.S.C. § 1030(e)(1). *See* U.S.S.G. § 2G2.1, n. 1.

Lastly, Shores asserts that Shapiro failed to object to the factual veracity that his conduct involved multiple victims, which, again, was factually accurate and again was agreed to in the plea agreement. *See* Doc. 69, at 2.

These allegations are baseless and contradicted by the record. Shores's motion should be denied.

3. *Counsel failed to "argue for mitigation of punishment and object to his sentence being substantively unreasonable."*

Shores claims that his sentencing attorney failed to present "readily available and compelling mitigating evidence at sentencing." Doc. 95, at 31. Shores's allegation that Shapiro failed to argue for a lesser sentence by discussing his lack of criminal history, employment, and familial status is factually incorrect. Shapiro discussed Shores's lack of criminal history. Sentencing Transcript, 20:9–13. Shapiro discussed Shores's employment. *Id.* at 20:21–23. Shapiro discussed Shores's family. *Id.* at 21:15–23. Shapiro actually utilized every fact that

13

Shores now claims were not argued, including stating, "[Shores] always conducted himself generally as we can see as a productive member of society, employed, raising his children, donated his time to other people in our community." *Id.* at 20:21–23.

Shores states that his attorney failed to offer letters of support. Doc. 95, at 32. This allegation is simply false. Shores's attorney filed letters from Shores's friends and family on August 21, 2024. Doc. 84. These filings were referenced by Shores's counsel during the sentencing hearing:

> You received several letters from his still present –his wife, some of his children—they're behind me in the front row—some other friends. They all paint a picture of who we all thought John Shores was. They all pain a picture of who we all thought John Shores was. They're all obviously –shocked is probably not even a good enough word from where Mr. Shores has now found himself in. He's always conducted himself generally as we can see as a productive member of society, employed, raising his children, donated his time to other people in our community….All the letters are fairly consistent. I think they speak true to the person they all believed and knew who John Shores was. I believe at least two of his sons are here today and I believe they're standing by their father and they're hoping for the best for himself.

Sentencing Transcript, 20:17–21:19. These filings were even explicitly referenced as being considered by this Court at sentencing: "Filing number 84 was a number of letters that I have – that I have read with family and friends of Mr. Shores." Sentencing Transcript, 13:22–23.

Shores claims that Shapiro failed to object to the reasonableness of the sentence. Shores's 240-month sentence is within the 235-to-293-month advisory guideline range, which makes the sentence presumptively reasonable. The 240-month sentence was also within the sentencing range that Shores explicitly agreed to and that he agreed was "the appropriate disposition." Doc. 69, at 3. There was no legal basis for Shapiro to object to the sentence imposed and Shores cannot show that he was prejudiced by Shapiro's failure to do so.

Shores also claims that he has suffered prejudice in that he could not appeal his sentence. However, Shores gave up his right to appeal as part of his plea agreement which contained a

14

plea waiver. Doc. 69, at 7. This plea agreement has been consistently found enforceable. *United States v. Seizys*, 864 F.3d 930, 931 (8th Cir. 2017).

Shores's allegations are baseless and contradicted by the record. Shores's motion should be denied.

### **<u>CONCLUSION</u>**

For the foregoing reasons, the United States respectfully requests this Court to dismiss Shores's § 2255 Motion on the merits. Shores's allegations are contradicted by the record and fail to satisfy either of the *Strickland* prongs: Shapiro was not deficient, and Shores was not prejudiced. In reality, Shapiro provided competent legal representation and Shores benefitted significantly. Shores's allegations are frivolous with no factual or legal basis.

Respectfully Submitted,

UNITED STATES OF AMERICA,
Plaintiff,

LESLEY A. WOODS
United States Attorney
District of Nebraska

By:    s/ Sean P. Lynch
       SEAN P. LYNCH, #25275
       Assistant U.S. Attorney
       1620 Dodge Street, Ste. 1400
       Omaha, Nebraska  68102
       Tel: (402) 661-3700
       Fax: (402) 661-3084
       E-mail: sean.lynch@usdoj.gov

15

CERTIFICATE OF SERVICE

I hereby certify that on April 9, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to all registered participants. I also hereby certify that a copy of the same was served by regular mail, postage prepaid, to the following non-CM/ECF participants:

John C. Shores, Jr. #72624-510
United States Penitentiary (USP) -
Thomson
Inmate Mail/Parcels
P.O. Box 1002
Thomson, IL 61285


s/ Sean P. Lynch
Assistant U.S. Attorney